FRANCK BROS., Inc., a Corporation, Plaintiff-Respondent,

v.

Olga ROSE, a/k/a Betty Rose and Robert A. Rose, her Husband, Defendants-Appellants,
D. Calhoun Jones, Trustee, and Elizabeth Herweck, Joseph Falzone, Trustee, and Edward K. Love Jr., Defendants.

No. 45563.

Supreme Court of Missouri, Division No. 1.

April 8, 1957.

Motion for Rehearing or to Transfer to Court en Banc Denied May 13, 1957.

**808**

C. Willard Max and R. W. Jacobsmeyer, Clayton, for appellants.

Ziercher, Tzinberg, Human & Michenfelder, Herbert W. Ziercher, Clayton, for respondent.

HOLMAN, Commissioner.

Plaintiff in this action sought a decree adjudicating that it is the sole owner, in fee simple, of a strip of ground (described as a 15-foot roadway) through a tract of land owned by plaintiff, and barring defendants from claiming any title or interest therein. The defendants are Olga Rose, the record owner of the disputed roadway, Robert A. Rose, her husband, and the trustees and noteholders named in two deeds of trust executed by the Roses. The trial court found the issues in favor of plaintiff. From the ensuing judgment and decree the defendants Rose have duly appealed. Since the case is one involving "the title to real estate," we have appellate jurisdiction. Article V, Section 3, Constitution of Missouri 1945, V.A.M.S.

By a deed dated July 2, 1940, Gilbert Franck and Dickson (Richard) Franck acquired title to a tract of land in St. Louis County, Missouri, described as follows: "Lots Four (4) and Five (5) of Ephraim Barber's Estate Subdivision in Section 36, Township 45 North, Range 3 East, containing together 82.54 acres, excepting therefrom the southern part of Lot Five (5) conveyed to Joseph Boehn by deed recorded in Book 765 page 387, containing 20 acres, excluding fifteen (15) foot private road, as now traveled from east to west through said 20 acre tract, together with all improvements thereon. Subject to roads and easements, if any." In 1950, Gilbert and Dickson conveyed the land to plaintiff, Franck Bros., Inc.

On July 1, 1948, defendant Olga Rose obtained title to a tract of land which included "Lot 3 of the Subdivision of the Estate of Ephraim Barber, deceased, containing 41.63 acres," the west boundary of said lot adjoining the east boundary of plaintiff's Lot 4. Also included in the conveyance to Mrs. Rose was "a roadway, 15 feet wide [through described tracts which we will refer to as Lots 4 and 5] where now located, connecting with Shepard County Road." The land involved in this case is that 15-foot roadway through Lot 4. It was first created of record in 1920 in a conveyance to Patrick M. Queenan wherein the roadway through Lots 4 and 5 was described in connection with the conveyance of Lot 3 (and other land). No purpose would be served by detailing herein the chain of title to the property involved as there is no dispute about the fact that at trial time Mrs. Rose was the record owner of the roadway (whether it be an easement or fee) and plaintiff was the owner of Lot 4, except for the interest, if any, of the Roses in the roadway.

Plaintiff contends (1) that any interest the Roses may have acquired in the roadway has been extinguished by the adverse possession of plaintiff and its grantors since 1940, and (2) that the interest of said defendants and their predecessors in title was only an easement for a roadway and that such has been legally abandoned by them. The defendants Rose contend that (1) Olga acquired a fee simple title in the 15-foot strip, (2) plaintiff failed to prove all of the elements necessary to gain title by adverse possession, and (3) assuming that her interest was an easement it has not been lost by abandonment.

As stated, the trial court found the issues for plaintiff. In part, the decree recited, "That plaintiff and its predecessors in title have shown by clear and positive proof that they have occupied all of said Lot 4 in actual, open, notorious, adverse, continuous, undisputed, exclusive and lawful possession and under their warranty deed more than ten years next before the commencement of this action, to-wit: since the 2nd day of July, 1940; that no roadway through said Lot 4 has been used as a roadway connecting the property of defendants Rose with Shepard County Road during said period; that plaintiff and its predecessors in title have paid all general taxes of every kind on said property in good faith; * * * that it is not necessary for this court to determine whether the grant to Patrick M. Queenan is an easement for a roadway or a fee to the 15 foot strip described in said conveyance because * * the adverse possession by plaintiff and its predecessors in title for over ten years has resulted in the extinguishment of all rights defendants Rose may have had in the property of plaintiff, whether such rights were a fee interest or an easement running with Rose's land."

The evidence concerning the issues of adverse possession and abandonment consists of the testimony of three witnesses, certain photographs, and the records of tax payments, deeds of trusts, etc.

Plaintiff, for its proof on the contested issues, presented only one witness, Richard Franck, who, with his brother Gilbert, purchased Lot 4 on July 2, 1940. He stated that in the process of preparing to consummate the purchase, they discovered the record of the roadway in question upon examination of the title; that they then went to the property in an effort to locate the roadway and found some rocks and "washed out gulleys that we assumed to be a road." (Apparently, this discovery did not cause the Franck brothers to refuse to purchase the land.) The witness further stated that shortly after they obtained title he and his brother rode horses over the land and, in so doing, came to an old wooden bridge near the eastern boundary of Lot 4 (which appeared to be a part of the roadway in question); that they attempted to lead a horse across the bridge and "when the horse got on the bridge he went through"; that within a year the bridge fell in "from sheer deterioration"; that it was impossible to use the roadway without the bridge as it was the means of crossing a creek or branch 12 feet deep and 20 feet wide; that no one has used, or claimed the right to use, the roadway from 1941 to the date of trial, and that he, his brother, and plaintiff have exercised full control over the property since said date to the exclusion of all others.

More specifically, Mr. Franck testified that he was a camp director by profession and was president of plaintiff corporation; that Lot 4 was quite hilly and much of it was covered with trees, although there was some cleared ground; that they dug a deep well and built a mess hall and bunk house and used portions of the property for a children's summer camp during the years 1941, 1942, and 1949; that upon occasions the children would camp out in the woods overnight and frequently would choose a spot near the old bridge; that the children attending the summer camp would go back and forth over the roadway. Mr. Franck stated that he lived in the house on this land most every summer after 1940, and

was upon the premises almost every Saturday and Sunday during the remainder of the year; that the portion of the land crossed by the alleged roadway is unfenced; that at various times they have placed "keep off" signs upon their land generally. This witness employed a photographer to take a number of pictures of various parts of this roadway and in connection with the introduction of those pictures in evidence, testified concerning the condition of the roadway. We think it sufficient to say generally that these pictures indicate that the bridge previously mentioned has almost completely rotted away and that portions of the roadway have grown up in brush, vines, weeds, and small trees, indicating that the roadway has not been improved, maintained, or used for a number of years. In one place a rather large tree has fallen across the roadway. The witness stated further that shortly before this suit was filed plaintiff contracted to sell its land, and that when the abstract of title disclosed the existence of this roadway the purchaser refused to accept the deed; that an attempt was then made to obtain a quitclaim deed to the roadway from Mrs. Rose, and upon her refusal to execute same, plaintiff instituted this quiet title action.

Defendants sought to support their contentions upon the vital issues by two witnesses, Mr. Rose and Eugene Mosley, a real estate broker. Mr. Rose conceded that he had not used the roadway in going to and from his wife's property from Shepard Road, and that they had an easement which they could use to go from their property to another road on the east side of their property; that in so doing it was necessary to cross a creek bed; that he had placed a bridge over this creek bed but it had washed out and now he could get over the roadway only when it was dry. He stated that he had used the roadway over Lot 4 in walking over it while hunting, but it developed on cross-examination that he did not confine his hunting to this roadway but strolled back and forth over the roadway and the surrounding area.

Mr. Mosley testified that he had been familiar with the Rose property and this roadway for 50 years. He stated that he had gone over the roadway in an automobile perhaps a dozen times in the last 10 years in showing the Rose property to prospective purchasers and that several of these instances had been since 1948. In connection with his testimony it was developed that he had some interest in the litigation, as he had a "deal" pending to sell the Rose property which apparently was somewhat contingent upon the outcome of the litigation.

It would appear that perhaps the owner of Lot 4 and the record owner of the roadway may have each paid the taxes upon this roadway. There was evidence that plaintiff and its predecessors have paid the taxes upon Lot 4 without any exclusion for the strip of ground constituting this roadway. It also appears that Mrs. Rose and her predecessors have paid the taxes upon the 15-foot roadway through Lots 4 and 5. The trial court attached some significance to the fact that a plat book from the assessor's office showed a 15-foot roadway along the extreme south edge of Lot 4. We do not attach any importance to that evidence. There was only one 15-foot roadway across Lot 4 and it was actually located somewhat north of the location shown on the plat book. However, it appears clear to us that since the title records do not disclose the location of the roadway upon this lot, the assessor has arbitrarily placed it at the south edge rather than trying to guess at some location elsewhere upon Lot 4. There would be no objection to that procedure since the exact location of the roadway was of no importance to the assessor's office. We therefore conclude that both plaintiff and Mrs. Rose, and their predecessors, have paid taxes upon this roadway. It may be that more significance should be attached to the payment of taxes by Mrs. Rose because this road-

way was separately assessed to her and specifically described in her tax receipts, whereas, plaintiff merely paid taxes generally upon Lot 4.

■■ In a case of this nature it is our duty to review the case de novo, weigh the competent evidence, and reach our own conclusions as to the facts, but "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Section 510.310(4) RSMo 1949, V.A.M.S.; Fisher v. Miceli, Mo.Sup., 291 S.W.2d 845. It is apparent that the trial court disregarded the testimony of Eugene Mosley as it found that the roadway had not been used as a roadway since 1940, and this finding was in direct conflict with the testimony of that witness. We defer to the ruling of the trial court in that regard and adopt that finding. We further note that the testimony of Mr. Rose did not materially aid the defendants' case. Therefore, on the issue of adverse possession, we must determine from the testimony of Richard Franck (and the exhibits) whether plaintiff proved the elements essential to the acquisition of title in that manner.

■ We have concluded that a determination of the issues herein require that we first decide whether the various deeds that described the 15-foot roadway conveyed a fee simple title or an easement. This calls for a construction of the deed originally creating the roadway in order to determine the intention of the parties thereto. After so considering the said instrument we have concluded that the parties intended that the interest conveyed should be an easement and not a title in fee simple. Stotzenberger v. Perkins, 332 Mo. 391, 58 S.W.2d 983. This seems to us to be rather apparent from the fact that it is described as "a roadway 15 feet wide through [described land] where now located, connecting with the Shepard County Road." A roadway is defined as "the strip of land over which a road is constructed; hence, a road." Webster's New Inter-national Dictionary, Second Edition. The obvious purpose of the clause in question was to give to the owner of Lot 3 a right of ingress and egress, over an existing private road, from said Lot 3 to Shepard County Road. The word "road" or "roadway" has seldom, if ever, been defined to mean land, but indicates a right of passage. Leavitt v. Towle, 8 N.H. 96; Kister v. Reeser, 98 Pa. 1. Moreover, our view is fortified by the surrounding circumstances. A strip of ground 15 feet wide and 1,350 feet long, as located herein, would have little value for any purpose other than a roadway. Furthermore, if a fee had been conveyed the owner of Lot 4 would have had no right to cross this strip and approximately 15 acres of land to the south of the road would have been completely inaccessible from the remainder of the lot. This substantial disadvantage would tend to indicate no such intention. On the other hand, if construed as an easement, the owner of Lot 4 could use the strip in any way he desired so long as such use did not interfere with the reasonable use and enjoyment of the dominant easement. Stotzenberger v. Perkins, supra. Therefore, as stated, we will regard the interest of Mrs. Rose (and her predecessors) as an easement and not a fee simple title.

■ "In order to establish title by adverse possession plaintiff had the burden of proving that he and those under whom he claims had possession of the land for the statutory period (10 years), and that such possession was (1) actual, (2) hostile, i. e., under claim of right, (3) open and notorious, (4) exclusive, and (5) continuous. City of Kirksville v. Young, Mo. Sup., 252 S.W.2d 286." Feinstein v. Mc-Guire, Mo.Sup., 297 S.W.2d 513, 515. Whenever any of these elements is lacking no title can ripen by adverse possession.

■ A review of the evidence has convinced us that plaintiff failed to prove that its possession was either "hostile" or "open and notorious." To comply with those requirements its possession should

have been of such open and visible character as would have been calculated to give notice to defendants and the neighborhood generally that plaintiff (and those under whom it claims) was exercising exclusive dominion and control over this strip of land, under claim of title, adversely to any claim of defendants or anyone else. Allen v. Wiseman, 359 Mo. 1026, 224 S.W.2d 1010; Anson v. Tietze, 354 Mo. 552, 190 S.W.2d 193.

■ Plaintiff's evidence was sufficient to indicate that it was exercising control over Lot 4 generally. However, the difficulty with its proof is that there is nothing to show actual dominion over and claim of ownership to the 15-foot strip constituting the roadway in question. There is no indication that plaintiff cleared the land, cultivated it, built any fences, constructed any buildings or other improvements thereon, or performed any other act of ownership with reference thereto. The most that can be said for plaintiff's evidence is that it shows that the Franck brothers, and the children attending camp during three summers, went back and forth over the roadway. While not clear, it might be inferred that upon some occasions the children camped at night on or near the roadway. Those acts were not sufficient to supply the elements which are necessary for a claim to ripen into title by adverse possession. Moreover, it should be noted that since appellants had only an easement over the 15-foot strip, the Franck brothers and their campers had a right to go back and forth over the roadway (since that would not interfere with the reasonable enjoyment of the easement), and hence those acts would in no way indicate a claim of adverse possession.

■ We will next consider the remaining question as to whether appellants lost their easement by abandonment. "An easement may be extinguished by abandonment. American Law of Property, Vol. II, § 8.96, p. 302; Powell on Real Property, Vol. 3, § 423, p. 493; St. Louis-San Fran-

cisco R. Co. v. Dillard, 328 Mo. 1154, 1162, 43 S.W.2d 1034, 1038[12]. Whether there has been an abandonment is a question of fact. 17 Am.Jur., Easements, § 142, p. 1026. An abandonment is proved by evidence of an intention to abandon as well as of the act by which that intention is put into effect; there must be a relinquishment of possession with intent to terminate the easement. Hatton v. Kansas City, C. & S. R. Co., 253 Mo. 660, 676, 162 S.W. 227, 232. While an intention to abandon may be inferred from circumstances strong enough to warrant that inference, an abandonment must be proved by clear and convincing evidence." Hennick v. Kansas City Southern Ry. Co., 364 Mo. 883, 269 S.W.2d 646, 650.

■ In the instant case we have adopted the finding of the trial court that the Roses and those under whom they claim had not used this strip of land as a roadway for almost 14 years prior to the filing of this suit. However, "it is almost universally held, according to the decisions, that mere nonuser, for a period however extended or continued, of an easement created by a grant will not amount to an abandonment." 28 C.J.S., Easements, § 60(b), p. 725. This court stated that rule in substantially the same language in the cases of Roanoke Inv. Co. v. Kansas City & S. E. Ry. Co., 108 Mo. 50, 17 S.W. 1000, and Dulce Realty Co. v. Staed Realty Co., 245 Mo. 417, 151 S.W. 415. However, we note that in the case of Barkshire v. Drainage Dist. No. 1 Reformed, Mo.App., 136 S.W.2d 701, the Springfield Court of Appeals construed our case of Hatton v. Kansas City, C. & S. R. Co., 253 Mo. 660, 162 S.W. 227, as holding that nonuser of an easement for the period prescribed by the statute of limitations constitutes an abandonment. We do not agree with that construction. The statement (which was actually dictum) referred to was, 253 Mo. 675, 162 S.W. 232: "Mere nonuser of an easement resting in grant * * * for a period short of that prescribed by the statute of limitations, will not extinguish the easement, unless accompanied by an inten-

tion on the part of the owner of the dominant estate to abandon it." That is not the equivalent of saying that mere nonuser for the period prescribed by the statute will extinguish the easement. We note that the court, in support of the foregoing statement, cited the Roanoke Inv. Co. case, supra, which clearly states that nonuser for the statutory period will not extinguish the easement unless accompanied by the adverse possession of the servient owner or other acts by the dominant owner indicating a clear intention to abandon the easement. This was the meaning we think the court intended to convey in the quoted statement from the Hatton opinion.

■ We will accordingly consider whether there was clear and convincing evidence in this case of an intention on the part of Mrs. Rose and her predecessors to abandon the easement in question. As we have indicated, the only evidence tending to show such an intention was nonuser and failure to maintain the bridge and roadway. We have already shown that mere nonuser is not sufficient to extinguish the easement and, as a general rule, neglect of the condition of the roadway, in addition to nonuser, is not enough to show an abandonment. Annotation, 25 A.L.R.2d 1265, 1288; Chitwood v. Whitlow, 313 Ky. 182, 230 S.W.2d 641.

■ It will appear from the foregoing that we do not consider that evidence as sufficient to indicate an intention to abandon the easement. On the contrary, we think there is strong evidence to the effect that no such intention existed. We refer to the fact that in 1948 Elizabeth A. Herweck conveyed the easement to Mrs. Rose in connection with the sale of Lot 3 and other land. Thereafter, on two occasions, Mrs. Rose (joined by her husband) included the easement in deeds of trust given upon her property. Furthermore, Mrs. Rose and her predecessors have paid the taxes upon this specifically described 15-foot roadway. The fact that Mrs. Herweck and Mrs. Rose conveyed, mortgaged,

and paid the taxes upon this roadway is almost irrefutable evidence that they had no intention of abandoning this easement.

What we have said will indicate our view that the trial court should have found the issues relating to adverse possession and abandonment in favor of the defendants.

The motion of plaintiff-respondent to dismiss the appeal because of appellants' failure to comply with 42 V.A.M.S. Supreme Court Rule 1.08 is overruled.

The judgment is reversed and cause remanded with directions to the trial court to set aside the judgment and decree heretofore entered and to enter a new judgment to the effect that plaintiff is the owner in fee simple of the said 15-foot roadway, subject however to the existing easement herein described.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.