Charles R. BEERY and Sharon K. Beery, Respondents,

v.

Michael K. SHINKLE and Lisa A. Shinkle, Appellants.

No.  WD 64777.

Missouri Court of Appeals, Western District.

June 13, 2006.

Robert B. Randolph, St. Joseph, MO, for respondents.

Gabriel A. Domjan, Lee's Summit, MO, for appellants.

Before SMITH, C.J., and ULRICH and HARDWICK, JJ.

EDWIN H. SMITH, Chief Judge.

Michael K. and Lisa A. Shinkle appeal the judgment of the Circuit Court of Buchanan County granting the respondents, Charles R. and Sharon K. Beery, an easement on the appellants' property, to provide the respondents ingress and egress to their property, which had become landlocked after the respondents sold a portion of their property to the appellants. They also appeal the trial court's judgment ordering them to pay the respondents actual and punitive damages for crop losses incurred by the respondents, which were allegedly caused by the appellants' interfering with the respondents' easement.

The appellants raise three points on appeal. In Point I, they claim that the trial court erred in granting the respondents a permanent easement across the appellants' property along the "South Road," based on "strict necessity," because in doing so it misapplied § 228.342.[1] In Point II, they claim that the trial court erred in establishing the "South Road" as the location of the easement, because its finding, in accordance with the law of "strict necessity" for locating the easement, that the "North Road—New Tract" proposed by the appellants as an alternative location for the easement was not "reasonably practical," was against the weight of the evidence. In Point III, they claim that the trial court erred in awarding the respondents actual and punitive damages on their claim in Counts III and IV for interference with their easement across the appellants' property because at the time of the alleged damages the location of the easement had yet to be fixed.

We affirm in part, and reverse and remand in part.

### Facts

The respondents owned 117 acres of land in Buchanan County, Missouri. On June 18, 2000, they sold the eastern 40 acres to the appellants. The respondents kept the remaining 77 acres as farmland. By selling the eastern portion of their land, the respondents were unable to access their remaining 77 acres without crossing the appellants' land. Thus, the real estate contract contained a provision, by which the appellants granted the re-

---

**1.** All statutory references are to RSMo, 2000, unless otherwise indicated.

spondents a permanent easement across their property so they could access their remaining property. In that regard, the contract provided that the appellants were granting the respondents a "permanent farm easement for access across [the] property to [respondent's] property adjacent to west." However, because the appellants had not yet decided where they wanted to locate their house, the real estate contract did not specify the location of the easement.

On July 13, 2000, the parties signed another agreement, in which the appellants agreed to "grant [respondents] a Forty (40) foot wide easement." However, because the appellants still did not know where they wanted to locate their house, this subsequent agreement merely provided that "it is mutually agreed upon by both parties that said easement be in a location that is acceptable to both Buyer and Seller."

The respondents can gain access through their property by using one of three roads. The first road, the "South Road," runs across the southern portion of the appellants' land. The second road, the "North Road—Old Tract," begins at the same place along the public road as the "South Road," but splits off in a northerly direction on the property, crosses a creek and then veers back to the "South Road" on the western portion of the appellants' property. The third road, the "North Road—New Tract," travels the same path as the "North Road—Old Tract," except that it does not veer back to connect to the "South Road" and instead continues straight across until it reaches the respondents' property.

Approximately one year after they purchased the property, the appellants placed a modular home on the southern part of their property. They located their home approximately 350 yards away from the county road and 50 yards north of the "South Road." From the appellants' home to the public road, the "South Road" was graveled. However, from the appellants' home to the respondents' property, the "South Road" was not graveled.

Prior to the easement across the appellants' property being located, the respondents regularly used the "South Road" to gain access to their property. In 2003, the parties met to discuss the location of the easement. The respondents wanted the "South Road" as the easement, while the appellants wanted the "North Road—New Tract" as the easement. The parties were unable to come to an agreement regarding the location of the easement. After this meeting, in October of 2003, the appellants placed a fence across the "South Road," which prevented the respondents from using the "South Road" to harvest their crops in 2003 and 2004.

As a result of the appellants' obstruction of the "South Road," on October 30, 2003, the respondents filed a six-count petition in the Circuit Court of Buchanan County. In Count I, they sought to establish a permanent easement on the "South Road" pursuant to the parties' real estate contract, and in Count II, they sought to enjoin the appellants from interfering with their right to access their property. In Counts III and IV, the respondents sought actual and punitive damages for crop losses that were allegedly caused by the appellants' blocking the respondents' access to their property via the "South Road." In Counts V and VI, the respondents sought actual and punitive damages for trespass for the appellants' children driving all-terrain vehicles on their land without permission.

In the appellants' answer to the respondents' petition, the appellants admitted that under the parties' real estate contract, the respondents were entitled to a perma-

nent easement on their property. Thus, on March 12, 2004, the respondents moved for partial summary judgment on Count I, seeking the entitlement of an easement. On March 31, 2004, in their response to the motion for partial summary judgment, the appellants admitted that the respondents were entitled to a permanent easement. Accordingly, on May 14, 2004, the trial court entered partial summary judgment for the respondents, on Count I of their petition, but left the issue of the location of the easement for trial.

On August 13, 2004, this case proceeded to a bench trial. At trial, Mr. Beery testified that although he wanted the "South Road" as the easement, in October of 2003, he told the appellants that he was willing to accept the "North Road—Old Tract" as the easement. However, the appellants continued to demand that the easement be located along the "North Road—New Tract." Mr. Beery also testified that neither the "North Road—Old Tract" nor the "North Road—New Tract" were ideal locations for the easement because they both crossed a mud hole and it was difficult, if not nearly impossible, for him to get his farm machinery past the mud hole.

On September 10, 2004, the trial court entered judgment for the respondents on Counts I and II, granting them an easement along the "South Road" on the basis of strict necessity and enjoining the appellants from further obstructing the "South Road." The trial court also entered judgment for the respondents on Counts III and IV, awarding them $21,437.32 in actual damages and $5,000 in punitive damages. As to Counts V and VI, the trial court found for the appellants.

This appeal follows.

### Standard of Review

In reviewing the judgment in a court-tried case, this court must affirm if it is supported by substantial evidence, is not against the weight of the evidence, and it does not erroneously declare and apply the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The evidence and all reasonable inferences drawn therefrom will be viewed in the light most favorable to the trial court's judgment, and all contrary evidence and inferences are disregarded. *Pride v. Lewis,* 179 S.W.3d 375, 378 (Mo.App.2005). The trial court is the trier of fact and, as such, determines the credibility of witnesses and is free to believe or disbelieve all or part of the testimony of a witness. *Id.* However, even if we find that the trial court erred, we will not reverse unless the error prejudiced the appellants. *Ward v. Kansas City S. Ry.,* 157 S.W.3d 696, 699 (Mo.App.2004). In a judge-tried case, prejudice occurs when in the absence of the trial error in question, the outcome of the case would have been different. *Id.*

### I.

In Point I, the appellants claim that the trial court erred in granting the respondents a permanent easement across the appellants' property along the "South Road," based on "strict necessity," because in doing so it misapplied § 228.342. Specifically, the appellants claim that the trial court misapplied the law of strict necessity in that while the court entered partial summary judgment for the respondents, granting them a permanent easement across the appellants' property, based on the law of express easement by agreement, it located or fixed the easement along the "South Road" based on the law of strict necessity, in accordance with § 228.342.

An easement gives the beneficiary of that easement the right to go on to the property of the person who granted or agreed to the easement and use it for a limited purpose. *Blackburn v. Habitat*

*Dev. Co.,* 57 S.W.3d 378, 385 (Mo.App. 2001). While an easement constitutes an interest in real estate, it is not an interest as to the title of the real estate. *Id.* "While normally created by grant or prescription, an easement may also be acquired by agreement." *Id.*

■■■ In Count I of their petition, the respondents sought a permanent easement across the property that they had sold to the appellants, to provide ingress and egress to the respondents' property, which was landlocked after the sale. As a legal basis for the easement, the respondents alleged, *inter alia,* that:

> The contract for the sale of the portion of plaintiffs' land to defendants specifically stated that defendants were to grant to plaintiffs a permanent farm easement for plaintiffs to have access across defendants['] land to plaintiffs['] remaining tract of land. In addition to the said contract, the parties executed an agreement dated July 13, 2000, wherein the defendants agreed to grant plaintiffs a forty (40) foot wide easement across their land so plaintiffs could have access to their remaining farm land.

Hence, the respondents were seeking an easement across the appellants' property, for egress and ingress to the respondents' property, based on the parties' real estate contract.[2] In their answer to the respondents' petition, the appellants admitted that, based upon the express written agreement of the parties, the respondents were entitled to the permanent easement they sought in Count I of their petition. Thus, their cause of action sounded in contract, rather than in what they denominated as a declaratory judgment action.

On March 12, 2004, the respondents filed a first amended motion for partial summary judgment, seeking an order of the trial court, pursuant to the real estate contract of the parties, granting the respondents a forty-foot-wide easement across the appellants' property, to provide ingress and egress to the respondents' property. As we noted in the facts, *supra,* in their March 31, 2004, response to the motion, the appellants admitted that the respondents were entitled to the permanent easement they sought, stating: "[appellants] state that the Court may enter a Partial Summary Judgment declaring that the [respondents] are entitled to have an easement to [respondents'] real estate." However, they asserted "that the location of the easement remain[ed] in dispute." Accordingly, on May 15, 2004, the trial court entered partial judgment for the respondents and against the appellants, granting the respondents a forty-foot-wide permanent easement across the appellants' property, leaving the issue of its location for trial.

■■■ The law is well settled that an easement can be created even though its location is not fixed contemporaneously therewith. *Hall v. Allen,* 771 S.W.2d 50,

---

2. Despite the contractual basis alleged for the granting of an easement in Count I, the respondents alleged in their prayer, as to that count, and all the other counts, that: "[respondents] have no adequate remedy at law, and therefore, seek equity." Equity cannot be invoked where there is an adequate remedy of law. *Cincinnati Cas. Co. v. GFS Balloons,* 168 S.W.3d 523, 525 (Mo.App.2005); *Shaner v. Sys. Integrators, Inc.,* 63 S.W.3d 674, 678 (Mo.App.2001). Enforcement of a contractual provision is a remedy at law. *Shaner,* 63 S.W.3d at 678. As such, the respondents did have an adequate remedy at law, as they alleged in Count I—enforcement of the parties' contractual agreement granting the respondents a permanent easement on the appellants' land. Hence, we are at a loss, from a legal perspective, to explain why the respondents alleged in their petition, in their prayer as to Count I, that they did not have an adequate remedy at law and were seeking equity.

53 (Mo. *banc* 1989); *Helgeson v. Ochs,* 988 S.W.2d 545, 548 (Mo.App.1999); *Hoelscher v. Simmerock,* 921 S.W.2d 676, 679 (Mo. App.1996); *Edward Runge Land Co. v. Busch,* 594 S.W.2d 647, 650 (Mo.App.1980). Where the location of the easement is unknown initially, it can be fixed subsequently "by express agreement or by a selection that can be inferred by proof of the use of a particular way." *Helgeson,* 988 S.W.2d at 548; *see also Edward Runge Land Co.,* 594 S.W.2d at 650. However, if the easement is not fixed by subsequent express agreement or by a selection that can be inferred by proof of the use of a particular way, then the trial court must fix the location of the easement. In doing so, the beneficiary of the easement is entitled to a convenient, reasonable and accessible use. *Hall,* 771 S.W.2d at 53; *Edward Runge Land Co.,* 594 S.W.2d at 650.

Here, the permanent easement granted by the trial court to the respondents, pursuant to the court's partial summary judgment, was based on an express written agreement between the parties. Hence, at trial, the trial court's determination of the disputed issue of the location of the easement, granted the respondents across the appellants' property, should have been governed by the law discussed, *supra,* with respect to the establishment of an express easement by agreement without the location being fixed. However, for some unexplained reason, the trial court ignored the applicable law and incorrectly applied the law of establishing a private road for "strict necessity," found in § 228.342. In other words, the trial court found an express easement by agreement without the location being fixed, but in determining the location of that easement, applied the law of strict necessity.

▮▮▮▮ Pursuant to § 228.342, a private road may be established in favor of an owner of real property for which there is no access to a public road, if the private road "is a way of strict necessity." As used in § 228.342, "strict necessity" includes the "necessity to establish ... a private road in order to utilize the property for the uses permitted by law." To be entitled to a private road for strict necessity, pursuant to § 228.342, the plaintiff must show that: "he or she owns the land, that no public road goes through or alongside the tract of land, and that the private road petitioned for is a way of strict necessity." *Johnston v. Shoults,* 160 S.W.3d 440, 442 (Mo.App.2005).

> Strict necessity has been interpreted to mean the absence of a reasonably practical way to and from plaintiff's land that the plaintiff has a legally enforceable right to use. Convenience does not satisfy the requirement of strict necessity. Rather strict necessity means the lack of a legally enforceable right to use a practicable way to and from a person's land, either private or public.

*Id.* (*quoting Anderson v. Mantel,* 49 S.W.3d 760, 763 (Mo.App.2001)). Once strict necessity has been established, the location of the private road is for the trial court to determine. *Johnston,* 160 S.W.3d at 442. In making its determination, the court must weigh and consider the respective benefits and burdens to the parties. *Id.* The private road "shall be situated so as to do as little damage or injury and cause as little inconvenience as practicable to the owner or owners of the real property over which the private road shall pass." § 228.345. The "location chosen for the road must be one that is reasonable and practical." *Anderson,* 49 S.W.3d at 763.

▮▮▮▮ Pursuant to the trial court's partial summary judgment for the respondents, finding that an express easement had been created in favor of the respondents by agreement of the parties, the respondents had a legally enforceable

right to use a practicable way to and from the appellants' land. As such, § 228.342 and § 228.345 had no application. Hence, the trial court erred in applying § 228.342 and § 228.345.

The fact that the trial court, here, misapplied the law in locating the easement on the "South Road" does not require a reversal of the court's judgment in that respect. *RCA Mut. Ins. Co. v. Sanborn*, 918 S.W.2d 893, 897 (Mo.App.1996). For it to be reversible error, there must be resulting of prejudice. *Ward*, 157 S.W.3d at 699. In a judge-tried case, our concern is the correctness of the decision reached by the trial court, not how it reached that decision. *City of Kansas City v. NY–Kan. Bldg. Assocs., L.P.*, 96 S.W.3d 846, 853 (Mo.App.2002). Hence, in determining prejudice in a judge-tried case, the issue is whether, absent the trial error in question, the outcome of the case would have been different. *Ward*, 157 S.W.3d at 699. The question, here, then is whether the location of the easement would have been different had the trial court applied the correct law of express easement by agreement, rather than the law of strict necessity, under § 228.342.

The appellants contend that the trial court, under the correct application of the law, should have fixed the easement as the "North Road—New Tract," rather than the "South Road." In that regard, the record reflects that the trial court, in determining the "South Road" was the correct location for the easement, found that the "North Road—New Tract" was not reasonable and practical. Given that determination, regardless of which law was applied in locating the easement, we fail to see that the outcome would have been any different. As such, we find that the error committed by the trial court in applying the incorrect law as to fixing the easement was harmless error.

Point denied.

## II.

In Point II, the appellants claim that the trial court erred in establishing the "South Road" as the location of the easement, because its finding, in accordance with the law of "strict necessity" for locating the easement, that the "North Road—New Tract" proposed by the appellants as an alternative location for the easement was not "a reasonably practical alternative route," was against the weight of the evidence in that the "uncontroverted evidence" demonstrated that the "North Road—New Tract" was a practical and convenient alternative route. Specifically, the appellants claim that the evidence in the record demonstrates that in October of 2003, Mr. Beery agreed to use the "North Road—Old Tract" as the easement. The appellants claim that because the "North Road—Old Tract" crosses the same mud hole as the "North Road—New Tract," then by implication Mr. Beery must have been willing and able to use the "North Road—New Tract" as the easement. The appellants also claim that evidence in the record demonstrates that in October of 2003, Mr. Beery, through his real estate agent, proposed to use the "North Road—New Tract," as the farm easement. The appellants infer that the "North Road—New Tract" must have been a reasonable alternative or Mr. Berry, through his real estate agent, would not have proposed it.

In claiming as they do in this point, the appellants are necessarily applying the law of "strict necessity." Of course, we rejected such application in Point I. Hence, it matters not whether the evidence was sufficient to support the trial court's findings in accordance with the law of "strict necessity."

■ Regardless of which law applies, even if we were to consider the sufficiency of the evidence to establish whether the "North Road—New Tract" was not a reasonably practical alternative route, the appellants would still not prevail on their claim in this point. This is so in that their claim relies on the proposition that because this testimony was uncontroverted, it had to be believed by the trial court. That is a proposition that is not recognized in the law. To the contrary, it is well settled that the trial court is free to believe or disbelieve all, part or none of the evidence, including disbelieving evidence that is uncontroverted. *Nautilus Ins. Co. v. I-70 Used Cars, Inc.*, 154 S.W.3d 521, 528 (Mo.App.2005). And, in any event, the evidence as to whether Mr. Beery was willing to accept the "North Road—New Tract" was not uncontroverted, as the appellants contend. The record reflects that the respondents introduced evidence that, in fact, contradicted this assertion. In that regard, the record reflects that Mr. Beery testified that he did not instruct his real estate agent to propose to the appellants that the "North Road—New Tract" would be the farm easement. The trial court was free to believe this testimony. *Id.* If believed, this evidence alone was sufficient for the court to reasonably conclude that Mr. Beery did not propose the "North Road—New Tract" as the easement. In addition, Mr. Beery testified that crossing the "North Road—New Tract" was impractical because of the mud hole. The trial court was free to believe this testimony. *Id.* If believed, this evidence alone was sufficient for the court to reasonably conclude that the "North Road—New Tract" was not a practical alternative for the permanent easement.

Point denied.

## III.

■ In Point III, the appellants claim that the trial court erred in awarding the respondents actual and punitive damages on their claim in Counts III and IV for interference with their easement across the appellants' land because at the time of the alleged damages the location of the easement had yet to be fixed. We agree.

In Counts III and IV of their petition, the respondents sought actual and punitive damages for the loss of crops in 2003 and 2004, caused by the appellants blocking the "South Road" and "North Road—Old Tract," preventing the respondents access for harvesting. In its judgment, the trial court found that the appellants had intentionally erected "obstacles to at least one and *perhaps* both accesses to [the respondents'] property." (Emphasis added.) We infer that the trial court was referring to the "South Road" and the "North Road—Old Tract."

■ It is well settled that the "holder of a roadway easement has a cause of action under Missouri law to recover such damages as are proximately caused by the wrongful interference with or obstruction of the easement." *Ridgway v. TTnT Dev. Corp.*, 126 S.W.3d 807, 813 (Mo.App.2004). Logically, to show interference with or obstruction of an easement, the location of the easement has to be known. Here, the trial court awarded damages for crop losses that occurred in 2003 and 2004, which were prior to the establishment of the location of the respondents' easement as the "South Road." As such, the respondents did not prove that they had an easement that the appellants had obstructed, thereby proximately causing them the damages awarded by the trial court.

While conceivably it might be possible, in the right factual situation, to show an entitlement to damages for interference with an easement, the location of which had yet to be fixed, by showing that any

and all access had been denied, that was not the case here. The trial court, in awarding damages, found in its judgment that one potential location for the easement had been obstructed, presumably the "South Road." However, there were, according to the record, at least two other roads that could have been used temporarily to harvest the respondents' crops: the "North Road—Old Tract" and "North Road—New Tract." As to the former, the trial court did not find that it was, in fact, obstructed. Rather, it found that "perhaps" it was obstructed. "Perhaps" is an equivocation and does not constitute a finding of fact that the "North Road—Old Tract" was obstructed such that it could not be used for harvesting crops in 2003 and 2004. And, while the trial court concluded, in establishing the location of the easement as the "South Road," that the "North Road—Old Tract" was not a viable alternative for the location of the permanent easement, it never found that it could not have been used to harvest the crops in 2003 or 2004. In fact, what the term "perhaps" demonstrates is that the trial court was not persuaded one way or another as to whether the "North Road—Old Tract" was obstructed. Where the court is not persuaded one way or another as to a proof element of the plaintiff's case, on which he has the burden of proof, the plaintiff loses. *Beshore v. Gretzinger*, 641 S.W.2d 858, 862 (Mo.App.1982).

### Conclusion

The judgment of the Circuit Court of Buchanan County for the respondents on Count I of their petition, granting them a permanent easement across the appellants' property and locating that easement on the "South Road," is affirmed. The circuit court's judgment for the respondents on Counts III and IV of their petition, seeking actual and punitive damages for interference with the respondents' easement, is reversed and the cause remanded to the court to amend its judgment to reflect that Counts III and IV are found in favor of the appellants.

ULRICH and HARDWICK, JJ., concur.