

# Missouri Court of Appeals

## Southern District

### Division Two

JAMES R. BAKER and ) 
LINDA BAKER, ) 
                     ) 
       Plaintiffs-Appellants, ) 
and ) 
                     ) 
CHARLES E. HIGHTOWER, ) 
DIANE HIGHTOWER, MARVIN D. ) 
GRIFFITH, MARILYN SUE ) 
GRIFFITH, and THE UNKNOWN )   No. SD31205 
HEIRS, DEVISEES, GRANTEES, )   Filed: 2-11-14 
SUCCESSORS AND ASSIGNS OF ) 
JAMES ELLIS THOMPSON, JR., ) 
DECEASED, ) 
                     ) 
       Plaintiffs, ) 
v. ) 
                     ) 
WALNUT BOWLS, INC., ) 
                     ) 
       Defendant-Respondent. ) 

### APPEAL FROM THE CIRCUIT COURT OF LACLEDE COUNTY

Honorable William R. Hass, Senior Judge

### **REVERSED AND REMANDED**

James Baker and Linda Baker (the Bakers) filed a declaratory judgment action asking the trial court to determine the location of an express easement reserved by their predecessors in title over property owned by Walnut Bowls, Inc. (Walnut Bowls).

Walnut Bowls' answer alleged two affirmative defenses: (1) the easement was abandoned; and (2) the easement was extinguished by adverse possession. Via a counterclaim, Walnut Bowls added additional parties to the lawsuit and asked the court to quiet title to the property. After a bench trial, the judge found in favor of Walnut Bowls. On appeal, the Bakers present three points for decision. They contend the trial court erred because: (1) absent an agreement by the parties as to the location of the express easement, the trial court was required to determine a convenient, reasonable and accessible course of ingress and egress for the Bakers; (2) their express easement was not abandoned by its non-use alone; and (3) Walnut Bowls failed to meet its burden of proving that the express easement was extinguished by adverse possession. Because all three points have merit, we reverse and remand for further proceedings consistent with this opinion.

## I. Standard of Review

Appellate review in this court-tried case is governed by Rule 84.13(d).[1] "This Court must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Grider v. Tingle*, 325 S.W.3d 437, 440 (Mo. App. 2010). "In our review, we accept the evidence and reasonable inferences favorable to the prevailing party and disregard all contrary evidence." *Creech v. Noyes*, 87 S.W.3d 880, 884 (Mo. App. 2002); *Buckner v. Castro*, 306 S.W.3d 655, 659 (Mo. App. 2010). In addition, this Court defers to the trial judge's superior opportunity to assess the witnesses' credibility. *Lee v. Hiler*, 141 S.W.3d 517, 520 (Mo. App. 2004); *Grider*, 325 S.W.3d at 441. No such

---

[1] All references to rules are to Missouri Court Rules (2013).

deference, however, is afforded the trial court when we review its conclusions of law. ***Mortenson v. Leatherwood Constr., Inc.***, 137 S.W.3d 529, 531 (Mo. App. 2004). "We independently evaluate whether the trial court properly declared or applied the law to the facts presented." ***Id***.; *see* ***Creech***, 87 S.W.3d at 884.

## II. Factual and Procedural Background

In 1952, F.R. and Louise Randolph were the owners of approximately 50 acres of land in Lebanon, Missouri. They granted a right-of-way easement over that entire tract to Laclede Electric Cooperative (Laclede). This easement allowed Laclede to enter the property for the purpose of constructing, operating, maintaining or replacing electric lines on the property, as well as removing or trimming trees and shrubs that could interfere with the operation of those power lines. Pursuant to that express easement, Laclede entered the property every six to ten years to clear the area under and around its power lines.

At some point prior to 1974, Junior and Wilma Thompson (the Thompsons) became the owners of the 50-acre parcel. Approximately 379 feet of the eastern side of the property abutted City Route 66. A portion of the west side of the property abutted the right-of-way of a railroad track. An old, north-south barbed-wire fence divided the 50 acres into two parcels. Access between these parcels was provided by a wooden gate near the fence's mid-point. The eastern parcel was approximately 21 acres in size and contained a small, one-bedroom house. The western parcel, approximately 29 acres in size, was used by the Thompsons to keep cattle. This parcel contained a pond, holding pens for cattle, a small storage building and a small hay barn about 100 feet south of the gate. A chute for loading cattle was built into the fence line between the gate and the barn.

In 1971, Walnut Bowls was incorporated. This business, which sold walnut products out of a gift shop, was operated by E.L. and Rachel Capoferri (collectively, the Capoferris) and John F. and Emily S. O'Reilly (collectively, the O'Reillys). Scott O'Reilly (Scott) was the O'Reillys' son.[2] The Walnut Bowls business was located about six miles from the Thompsons' property.

In March 1974, the Thompsons conveyed the 21-acre eastern parcel to the Capoferris and the O'Reillys by general warranty deed. Immediately following the legal description, the deed stated that the conveyance was "[s]ubject to reservation of easement by Junior Thompson and Wilma I. Thompson, his wife, from City Route 66 back to the property owned by them lying West of the tract herein-above described." The Capoferris and O'Reillys decided to move the Walnut Bowls business to their new property, the 21-acre eastern parcel. They brought in fill dirt, created a gravel parking lot adjacent to City Route 66 and cut another driveway entrance off of that road. They also installed two concrete islands for gas pumps and a third concrete island for gasoline storage tanks. All of the development was in the southeastern corner of the property adjacent to City Route 66. The remainder of the property remained largely wooded and overgrown.

In 1975, the existing Walnut Bowls gift shop building was physically moved and placed onto a new foundation on the 21-acre parcel. To provide security, the Capoferris and O'Reillys placed cables across the two driveway entrances at night. Dixie Clark (Clark), a Walnut Bowls employee who worked in the gift shop, also moved into the house on the property to watch the premises at night.

---

[2] Because the O'Reillys share their surname with their son, we will refer to Scott by his given name for clarity.

In 1985, the Walnut Bowls business closed. The Capoferris and O'Reillys leased their property to the Lebanon Early Education Program (LEEP). Clark continued to reside in the house. LEEP added a playground near the store building and some fenced areas for the children to play. The southwest driveway entrance to the property was closed, and the gasoline pumps were removed.

In 1998, the Capoferris and O'Reillys conveyed the 21-acre tract to Walnut Bowls (the Walnut Bowls property). Each deed stated that the grant was "[s]ubject to reservation of easement by Junior Thompson and Wilma I. Thompson, his wife, from City Route 66 back to the property owned by them lying West of the tract herein-above described."

That same year, the Bakers acquired the remaining 29-acre tract from the trustees of the Wilma Thompson Trust (the Baker property). In addition to the express easement to and from City Route 66, the Bakers also had access to their property via a different road across adjoining property to the west that the Bakers had owned since the 1980's. After the Bakers acquired their tract in 1998, James Baker used his tractor and bush hog to clear sprouts and brush approximately 200 yards past the old wooden gate in the barbed-wire boundary fence. This activity was performed no more than once or twice a year, and there may have been some years when he did not do so.

In 1999, LEEP stopped leasing the Walnut Bowls property, and Clark moved out of the house. Walnut Bowls then started a new business selling modular homes. The old gift shop was used as the office. The gas storage tanks and underlying concrete island were removed. The southwest entrance on City Route 66 was reopened, and the gravel parking lot was extended to the west. Walnut Bowls kept 30-33 modular homes in its inventory. The homes, which were either 16x80 feet or 28x80 feet in size, were placed

5

on blocks so they could be moved when sold. The homes were spread across the property in such a way that a car could not drive back to the west part of the property, but a person could walk between them. The modular home business ceased operations in early 2006. The last modular home inventory was removed from the Walnut Bowls property in 2007.

That same year, Walnut Bowls wanted to sell its property. A title examination noted the existence of the express easement, and the sale did not take place. Scott, who was President of Walnut Bowls, testified that this was when he first became aware of the Bakers' express easement. Neither the Bakers nor their predecessors in title had used the easement for ingress or egress prior to that time.

In July 2007, the Bakers filed their petition for declaratory judgment requesting that the trial court determine the location of the easement. Thereafter, Walnut Bowls put the steel cables back up across the two driveway entrances. In January 2008, Walnut Bowls filed a counterclaim requesting, *inter alia*, the court to find the Bakers had no easement over any portion of the Walnut Bowls property.[3]

Sometime between 2008 and 2010, Laclede entered the Walnut Bowls property pursuant to its express easement and used a bulldozer to clear brush underneath its electric lines. A number of tall trees were trimmed as well. Laclede was able to do so without providing any prior notice to Walnut Bowls. In March 2010, Walnut Bowls installed a lock and chain on the gate and bolted on a "No Trespassing" sign facing the Baker property.

---

[3] Walnut Bowls filed their counterclaim not only against the Bakers, but the Hightowers, the Griffiths and "the unknown heirs, devisees, grantees, successors and assigns of James Ellis Thompson, Jr., deceased." Only the Bakers have appealed from the judgment in Walnut Bowls' favor.

The case was tried to the court. The court found in favor of Walnut Bowls and adjudged that the Bakers had no easement interest in the Walnut Bowls property. The judgment contained findings of fact and conclusions of law setting out the following alternative bases for the court's decision: (1) the Bakers failed to present sufficient evidence from which the court could "determine and fix a definite easement route" on the property, either by an express agreement or evidence of past usage; (2) if the Bakers had an easement, they abandoned it; and (3) if the Bakers had an easement, it was extinguished by adverse possession. This appeal followed.

### III. Discussion and Decision

The Bakers present three points on appeal addressing the alternate grounds for the court's decision. For ease of analysis, we will address the Bakers' three points out of order.

*Point II*

In the Bakers' second point, they contend the trial court erred in concluding their easement had been abandoned. We agree.

An easement may be extinguished by abandonment, which must be proved by clear and convincing evidence. *Franck Bros., Inc. v. Rose*, 301 S.W.2d 806, 812 (Mo. 1957). Once an easement is established in a party, the opposing party has the burden to show abandonment. *Creech*, 87 S.W.3d at 884. To establish abandonment, non-use of the easement alone is insufficient; the non-use must be coupled with an act showing a clear intention to abandon the easement. *Id*. at 885. The following discussion from *Creech* is instructive:

> Mere nonuser of an easement acquired by grant, however long continued, does not of itself constitute abandonment. The reason mere nonuser will not destroy an easement is that it is a property right and thus it is not necessary that the owner make use of it to keep his right. Further, once an

easement is established or acquired, it is not abandoned or destroyed by mere nonuser or by the use of another means of ingress and egress. The fact that the easement holder finds a more convenient alternative route does not deprive the easement holder of the easement that remains for the holder's use and enjoyment whenever the holder has occasion to use the right.

An easement is considered abandoned when there is a history of nonuse coupled with an act or omission showing a clear intent to abandon. Accordingly, to prove an abandonment, there must be evidence of an intention to abandon as well as of the act by which that intention is put into effect; there must be a relinquishment of possession with intent to terminate the easement. The acts claimed to constitute the abandonment must be of a character so decisive and conclusive as to indicate a clear intent to abandon the easement. Acts evidencing an intention to abandon must clearly demonstrate the permanent relinquishment of all rights to the easement.

*Id*. at 884-85 (citations and quotation marks omitted). In **Creech**, the eastern district of this Court determined that the easement holders did not abandon their roadway easement, which was in bad repair, when they chose to use an alternative route instead. *Id*. at 185. "An easement is a property right, which the [easement holders] could use or not use, as they wished." *Id*. While they had "'abandoned' the *use* of the roadway ... there is no substantial evidence that they were thereby permanently relinquishing their *right* to an easement." *Id*. (emphasis in original). The opposing party therefore "failed in her burden to prove abandonment by clear and convincing evidence." *Id*.

The Bakers contend the evidence was insufficient to prove that they abandoned their easement. They argue that there was no proof that they, or their predecessors in title, committed any act exhibiting a clear intent to abandon the easement. We agree. The record before us contains no evidence of any act sufficient to prove an intention by the Bakers, or their predecessors in title, to abandon the easement. While there was ample evidence of non-use, such proof by itself is insufficient to establish abandonment. *Id*.; *see* **Franck Bros.**, 301 S.W.2d at 812; **Knox County Stone Co. v. Bellefontaine**

***Quarry, Inc.***, 985 S.W.2d 356, 361 (Mo. App. 1998) ("[a]n easement created by grant is not lost by non-user, no matter how long continued").[4] Therefore, Walnut Bowls failed to prove abandonment. *See* ***Creech***, 87 S.W.3d at 885; *see* ***Franck Bros.***, 301 S.W.2d at 812. The trial court's conclusion that the Bakers' easement was extinguished by abandonment was erroneous. Point II is granted.

*Point III*

In the Bakers' third point, they contend the trial court erred in finding that their easement had been extinguished by adverse possession. An easement can be extinguished by adverse possession. ***Creech***, 87 S.W.3d at 885. "To establish title to a tract of land by adverse possession, a claimant must prove that his possession of the land was (1) actual, (2) hostile and under claim of right, (3) open and notorious, (4) exclusive, and (5) continuous for ten years." ***Peasel v. Dunakey***, 279 S.W.3d 543, 546 (Mo. App. 2009). As the party claiming title by adverse possession, Walnut Bowls had to prove each element by a preponderance of the evidence. ***Nolte v. Corley***, 83 S.W.3d 28, 34 (Mo. App. 2002). "[F]ailure to establish any one of the elements of adverse possession will necessarily defeat the claim." ***Flowers v. Roberts***, 979 S.W.2d 465, 469 (Mo. App. 1998); *see also* ***Creech***, 87 S.W.3d at 886; ***Franck Bros.***, 301 S.W.2d at 811-12.

An easement merely grants a right to use land for particular purposes. ***St. Charles County v. Laclede Gas Co.***, 356 S.W.3d 137, 139 (Mo. banc 2011). For an easement to be exclusive, the language used to create it must exclude the servient tenant from

---

[4] Walnut Bowls argues that these cases are not controlling because the easement in this case "was never defined." That argument fails because "[a]n easement may be created even though its precise location is not described in the grant. If the location is not precisely fixed when the easement is first created, the grantee is entitled to a convenient, reasonable and accessible use." ***Hall v. Allen***, 771 S.W.2d 50, 53 (Mo. banc 1989); *see* ***Beery v. Shinkle***, 193 S.W.3d 435, 440-41 (Mo. App. 2006).

participating in the rights granted to the dominant owner. ***Grider***, 325 S.W.3d at 448; ***Maasen v. Shaw***, 133 S.W.3d 514, 518 (Mo. App. 2004). The absence of such language in the deeds creating the Bakers' easement means it is non-exclusive. As the owner of land burdened by this non-exclusive easement, Walnut Bowls therefore retained the right to control and use its property in any way that did not substantially interfere with the reasonable use of the easement by the easement holder. *See **Earth City Crescent Associates, L.P. v. LAGF Associates-Mo, L.L.C.***, 60 S.W.3d 44, 46 (Mo. App. 2001). As ***Peasal*** explains, "[r]elevant precedent suggests that, to extinguish an easement by adverse possession, a landowner's use must be incompatible with the easement holder's right of use." ***Peasel***, 279 S.W.3d at 546.

"An easement may be created even though its precise location is not described in the grant." ***Hall v. Allen***, 771 S.W.2d 50, 53 (Mo. banc 1989). "If the location is not precisely fixed when the easement is first created, the grantee is entitled to a convenient, reasonable and accessible use." ***Id***. When the location of the easement is unknown initially, the location can subsequently be fixed by express agreement or inferred from proof of the use of a particular way. ***Beery v. Shinkle***, 193 S.W.3d 435, 441 (Mo. App. 2006). If the easement is not fixed by subsequent express agreement or selection, however, "*the trial court must fix the location* of the easement." ***Id***. (emphasis added). In doing so, the easement holder is entitled to "a convenient, reasonable and accessible use." ***Hall***, 771 S.W.2d at 53; ***Beery***, 193 S.W.3d at 441.

Because the precise location of the ingress-egress easement was not specified in the grant, the Bakers and their predecessors in title were entitled to convenient, reasonable and accessible use. The relevant question, in determining Walnut Bowls' adverse possession claim, is whether it used its property in such a way that, for a ten-year

10

period, there was no available route for ingress or egress across its 21-acre tract. *See Peasel*, 279 S.W.3d at 546. Such proof is necessary to prove the actual, hostile, open and notorious, and continuous elements of Walnut Bowls' claim. *See id*. We find no such evidence in the record.

The construction and improvements to the Walnut Bowls property in 1974-75 did not substantially interfere with the reasonable use of the easement because passage from the eastern to the western part of the property was not completely obstructed. Clark's presence in the house to provide night-time security likewise presented no physical barrier to ingress, egress or passage between the two tracts. The use of cables across the driveways was a physical barrier to entry, but it was a transient condition used only at night for security purposes. This type of transient event is different than the complete obstruction of an easement by a permanent boundary fence or locked gate, like that eventually used by Walnut Bowls in 2010. *See, e.g.*, *Humphreys v. Wooldridge*, 408 S.W.3d 261, 269 (Mo. App. 2013) (permanent boundary fence that encompassed part of the easement); *Creech*, 87 S.W.3d at 886 (noting that a locked gate was the "first visible act of ownership" exercised by the claimant over the easement road); *Nolte*, 83 S.W.3d at 32-33 (locked doors extinguished easement). Furthermore, none of the foregoing actions prevented Laclede, another easement holder, from using its easement during that same time frame. While the trial court found that vehicular access to the west side of the property was blocked from 1999 to 2007 by the modular home business, that eight-year time period was insufficient to meet the ten-year time limit for continuous possession. Based upon our review of the record, the evidence was insufficient to prove that the Bakers or their predecessors in title were wholly excluded from having any available

11

east-west route for ingress and egress for a continuous ten-year period. *See Creech*, 87 S.W.3d at 886.

Because Walnut Bowls failed in its burden to prove all of the elements of adverse possession, its claim must fail. *See id.*; *Franck Bros.*, 301 S.W.2d at 811-12; *Peasel*, 279 S.W.3d at 546; *Flowers*, 979 S.W.2d at 471-72. The trial court's conclusion that the Bakers' easement was extinguished by adverse possession was erroneous. Point III is granted.

*Point I*

In the Bakers' first point, they contend the trial court misapplied the law by deciding that evidence of an express agreement or past usage was necessary for the court to locate the easement. The Bakers argue that, even in the absence of such evidence, the trial court must determine a convenient, reasonable and accessible course for the easement. We agree.

As already noted above, an easement can be created notwithstanding the absence of a precise description of its location in the grant. *Hall*, 771 S.W.2d at 53. If the grant does not precisely fix the easement's location, "the grantee is entitled to a convenient, reasonable and accessible use." *Id*. (holding that the trial court erred in its declaration that an easement must be described in a deed in order to be conveyed). In such a case, the location can be fixed by express agreement or inferred from past use of a particular way. *Beery*, 193 S.W.3d at 441. If neither of these methods can be used, however, it is the trial court's obligation to fix the location of the easement so as to provide the easement holder with convenient, reasonable and accessible use. *Hall*, 771 S.W.2d at 53; *Beery*, 193 S.W.3d at 441.

12

The grant creating the Bakers' easement did not fix its precise location. As the trial court found, there was no evidence of any express agreement concerning the easement's location or any way to infer its location from past use. By stopping there and concluding that there was no easement at all, however, the trial court misapplied the law. *See Hall*, 771 S.W.2d at 53; *Beery*, 193 S.W.3d at 441. On remand, "the court should undertake to outline a route of access consistent with the interests of convenience, and reasonable, accessible use." *Hall*, 771 S.W.2d at 53; *see also Chisholm v. MBM, LLC*, 348 S.W.3d 821, 824-25 (Mo. App. 2011). Once a definite route is determined, the judgment must contain a legal description of the easement. *See Creech*, 87 S.W.3d at 882 n.1. The trial court has the inherent authority to order a survey to establish a proper legal description. *See Harmon v. Hamilton*, 903 S.W.2d 610, 615 (Mo. App. 1995); *Dillon v. Norfleet*, 813 S.W.2d 31, 33 (Mo. App. 1991).

The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

JEFFREY W. BATES, J. – OPINION AUTHOR

ROBERT S. BARNEY, Sr. J. – CONCUR

DANIEL E. SCOTT, J. – CONCUR

13