**Carla BLAZIER, Respondent,**

v.

**Trish VINCENT, Director of Revenue, Appellant.**

**No. WD 65406.**

Missouri Court of Appeals, Western District.

Aug. 29, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 31, 2006.

Cheryl Ayn Caponegro Nield, Associate Solicitor, Jefferson City, MO, for appellant.

Kenneth M. Hayden, Versailles, MO, for respondent.

Before BRECKENRIDGE, P.J., HOWARD and HOLLIGER, JJ.

PATRICIA BRECKENRIDGE, Judge.

The Director of Revenue appeals the judgment of the circuit court setting aside the suspension of Carla Blazier's driving privileges. The director suspended Ms. Blazier's driver's license, under section 302.505, RSMo Cum.Supp.2005,[1] after she was arrested for driving with an excessive blood-alcohol content (BAC). After a trial *de novo*, the circuit court entered judgment in favor of Ms. Blazier, finding that the director failed to establish that Ms. Blazier's BAC exceeded the legal limit because the maintenance test results of the DataMaster breath analyzer instrument used to test Ms. Blazier's BAC were invalid and unreliable.

In her first point on appeal, the director asserts that the circuit court abused its discretion and misapplied the law in excluding the director's evidence of Ms. Blazier's BAC because the DataMaster was tested to be within the acceptable regulatory range of error established by the Department of Health. In her second point on appeal, the director claims that the circuit court erred in reinstating Ms. Blazier's driver's license because she established a *prima facie* case for suspension, which Ms. Blazier failed to rebut. Therefore, the director claims that the circuit court's judgment should be reversed and the suspension of Ms. Blazier's driver's license reinstated. Because the director established a proper foundation for the admission of a breathalyzer test, the circuit court abused its discretion in failing to admit Ms. Blazier's BAC test results. With the admission of Ms. Blazier's BAC test results, the director established a *prima facie* case for suspension of Ms. Blazier's driver's license. Because the circuit court did not admit the director's breathalyzer evidence, Ms. Blazier did not have ample opportunity to rebut the director's *prima facie* case. Therefore, the circuit court's judgment is reversed and the cause remanded to provide Ms. Blazier an opportunity to rebut the director's *prima facie*

---

1. All statutory references are to the Revised Statutes of Missouri Cumulative Supplement 2005.

case for suspension of her driving privileges.

### Factual and Procedural Background

On October 22, 2004, at approximately 2:30 A.M., Deputy Sheriff Dana Lowry noticed a black truck, which was being driven by Ms. Blazier, flashing its headlights erratically. Deputy Lowry activated his lights and sirens and attempted to stop Ms. Blazier. Ms. Blazier, however, did not stop and instead drove off in an attempt to get away from Deputy Lowry. Deputy Lowry continued to pursue Ms. Blazier when she turned onto a gravel road. Ultimately, Deputy Lowry was able to block Ms. Blazier's path and force her to stop the truck. Deputy Lowry ordered Ms. Blazier out of the truck but she pretended not to hear him. Finally, Deputy Lowry opened the door of the truck and made Ms. Blazier get out of the vehicle.

Upon opening Ms. Blazier's door, Deputy Lowry "could smell the odor of intoxicants just rolling out of the vehicle off of her." As Deputy Lowry attempted to restrain Ms. Blazier in wrist restraints, she was uncooperative and continued to resist until both Deputy Lowry and Ms. Blazier fell to the ground. At one point, Ms. Blazier pointed a key at Deputy Lowry in a defensive manner. Eventually, Deputy Lowry was able to restrain Ms. Blazier in his patrol car. During the time Deputy Lowry attempted to restrain Ms. Blazier, she had a hard time maintaining her balance, her speech was slurred, and she was belligerent and verbally abusive. Because of Ms. Blazier's noncompliance, Deputy Lowry did not administer field sobriety tests at that time. Instead, he arrested Ms. Blazier and took her to the police station. At the Laurie Police Department, Deputy Lowry informed Ms. Blazier of her rights under the Missouri Implied Consent Law, and Ms. Blazier consented to a breath analyzer test. Officer Charlene Elkin performed the breath test on Ms. Blazier. The breath test revealed that Ms. Blazier had a blood alcohol concentration of .189%.

Thereafter, the director suspended Ms. Blazier's driving privileges, under section 302.505.1, for driving with a blood alcohol concentration in excess of .08%. The suspension was upheld after an administrative hearing. Ms. Blazier then filed a petition for trial *de novo* in the circuit court.

At trial, Ms. Blazier objected to the introduction of the BAC test result on the grounds that the DataMaster breath analyzer instrument used to test her BAC was not properly maintained. In particular, Ms. Blazier argued that the director failed to demonstrate that the DataMaster was functioning properly during maintenance because one of the three readings on the machine during the maintenance check was .096, and the manufacturer of the simulator solution used to calibrate the machine certified that its solution should produce readings of .10, with a range of error of plus or minus .003. Ms. Blazier argued that because the machine produced a reading outside of what the manufacturer certified that the solution should produce, the machine was not functioning properly and, therefore, the machine should have been taken out of service. The circuit court sustained Ms. Blazier's objection, but permitted the director to make an offer of proof.

During the director's offer of proof, John Clark Richardson, a Type II permit holder who performed maintenance on the DataMaster instrument in question, testified that the machine was functioning within Department of Health guidelines, which require readings within plus or minus .005 of .10. Ms. Blazier presented no evidence. At the conclusion of the hearing, the circuit court stated on the record that it believed that the director had shown that the arresting officer had probable cause to

arrest Ms. Blazier for driving while intoxicated, but failed to demonstrate that the DataMaster in question was "operating in its approved manner through its calibration and its testing on this particular date when it gave a result in this case" and, therefore, the circuit court did not admit the director's breathalyzer evidence. In its written judgment, entered on April 12, 2005, the circuit court found that the simulator solution used in this case "produced a vapor alcohol value outside the manufacturers accepted range of deviation during the maintenance of the DataMaster in question, and accordingly, [ ] the solution was invalid and unreliable at that time." Thus, the circuit court found that "the maintenance test results of the DataMaster obtained using [the solution] are therefore invalid and unreliable." Consequently, without evidence of Ms. Blazier's BAC, the circuit court found that the director failed to demonstrate that Ms. Blazier's blood alcohol content exceeded the legal limit and, accordingly, set aside the suspension of Ms. Blazier's driving privileges. The director filed this appeal.

## Standard of Review

■ This court will affirm the judgment of the circuit court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Coyle v. Dir. of Revenue*, 181 S.W.3d 62, 64 (Mo. banc 2005). In addition, this court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *Vernon v. Dir. of Revenue*, 142 S.W.3d 905, 909 (Mo.App. S.D.2004). The trial court abuses its discretion "when the trial court's ruling is clearly against the logic of the circumstances, is so arbitrary and unreasonable as to shock the sense of justice, and shows a lack of careful consideration." *Id.*

## Circuit Court Abused Discretion In Failing to Admit BAC Test Result

■ In her first point on appeal, the director asserts that the circuit court abused its discretion and misapplied the law in excluding her breathalyzer evidence because the maintenance report of the DataMaster used to test Ms. Blazier's BAC produced results within the acceptable regulatory range established by the Department of Health. Moreover, the director claims that the range of error for the simulator solution established by the manufacturer of the solution is factually irrelevant. In her second point on appeal, the director claims that the circuit court erred in reinstating Ms. Blazier's driving privileges because the court's ruling is not supported by substantial evidence and is against the weight of the evidence, since the arresting officer had probable cause to believe that Ms. Blazier was driving while intoxicated and she had a BAC of .189%. Because Ms. Blazier concedes that the director demonstrated that probable cause existed for arresting her for driving while intoxicated, the only issue for resolution is the director's first point on appeal.

■ Under section 302.505.1, the director is required to suspend or revoke the driver's license of a person arrested upon probable cause to believe that the person was driving with a blood alcohol concentration in excess of .08%. "Any person aggrieved by a decision of the department may file a petition for trial de novo by the circuit court." Section 302.535. At review of a license suspension hearing, the director has the burden of demonstrating, by a preponderance of the evidence, that (1) there was probable cause for arresting the driver for driving while under the influence, and (2) the blood alcohol concentration level in the driver's blood exceeded the legal limit, i.e., .08%. *York v. Dir. of*

*Revenue,* 186 S.W.3d 267, 269–70 (Mo. banc 2006). *See also* Section 302.505.1. "This evidence creates a presumption that the driver was intoxicated," which the driver is then entitled to rebut. *Coyle,* 181 S.W.3d at 64–65.

As noted above, on appeal, Ms. Blazier concedes that the director's evidence established the first element of a *prima facie* case, that is, that the arresting officer had probable cause to arrest her for driving while under the influence. While the trial court found that the director established probable cause to arrest, the court was persuaded by Ms. Blazier's challenge to the admission of the director's evidence regarding the second element of the director's *prima facie* case, that is, whether her blood alcohol content was .08% or greater.

■ To establish that a driver's blood alcohol content was over the legal limit, "the director can introduce evidence of a breathalyzer test." *Coyle,* 181 S.W.3d at 64. At trial, Ms. Blazier objected to the introduction of the director's breathalyzer evidence on the grounds that the Data-Master instrument used to test her BAC was not properly maintained. Specifically, Ms. Blazier objected to the admission of the director's breathalyzer evidence based on Patrolman Richardson's testimony that, during maintenance of the DataMaster, one of the three readings on the machine was .096, and the manufacturer of the simulator solution used to calibrate the machine certified that its solution should produce readings of .10, with a range of error of plus or minus .003. Ms. Blazier maintained that because the DataMaster produced a reading outside what the manufacturer certified that the solution should produce, the machine was not functioning properly and should have been taken out

of service as required by the Code of State Regulations, section 19 CSR 25–30.011(5)(B).[2] The trial court agreed with Ms. Blazier and refused to admit the director's evidence of Ms. Blazier's BAC test result.

■ On appeal, the director claims that she provided a sufficient foundation for the admission of Ms. Blazier's BAC because the maintenance report showed and Patrolman Richardson testified that the DataMaster tested within the acceptable regulatory range established by the Department of Health. To establish a proper foundation for the admission of a breathalyzer test, the director has the burden of demonstrating that "the test was performed: (1) following the approved techniques and methods of the division of health, (2) by an operator holding a valid permit, (3) on equipment and devices approved by the division." *Coyle,* 181 S.W.3d at 64. "[O]nce the [d]irector proves these foundational requirements, the BAC result should be admitted." *Coyle v. Dir. of Revenue,* 88 S.W.3d 887, 895 (Mo.App. W.D.2002). *See also Stuart v. Dir. of Revenue,* 761 S.W.2d 234, 238 (Mo.App. S.D. 1988) ("If a breathalyzer test is administered by a certified operator in accordance with the operating procedures promulgated by the Missouri Division of Health, a prima facie case for the admission of the test results is made."). Each of these requirements will be addressed in turn.

The director's evidence regarding the first foundational requirement for admission of a breathalyzer test was that Officer Elkin administered the breath test to Ms. Blazier and observed Ms. Blazier for at least fifteen minutes before administering the breath test. Officer Elkin also testified that she followed the required check-

**2.** Under 19 CSR 25–30.011(5)(B), "An individual permitted to operate a breath analyzer shall—1. Immediately suspend use of a breath analyzer that is not functioning properly[.]"

list when she administered the breath test and that the DataMaster machine was functioning "as it was supposed to" when she administered the test. Moreover, Ms. Blazier does not contend that Officer Elkin did not perform the breathalyzer test correctly. Thus, the director established the first foundational requirement for admission of Ms. Blazier's BAC test result.

The director's evidence regarding the second foundational requirement for admission of a breathalyzer test, i.e., that the test was performed by an operator holding a valid permit, was that Officer Elkin, who administered the test, holds a Type III permit for the DataMaster instrument. Ms. Blazier also does not claim that Officer Elkin lacked the proper permit to perform the test. Consequently, the director established the second foundational requirement for admission of Ms. Blazier's BAC test result.

The third foundational requirement for admission of a breathalyzer test is that the test was performed on equipment and devices approved by the Department of Health. *Coyle*, 181 S.W.3d at 64. Here, Ms. Blazier objected to the admission of the director's breathalyzer evidence on the grounds that the DataMaster used to administer the test to Ms. Blazier was not functioning properly. " '[I]f a timely objection is made to the admission of the [BAC test result], the [d]irector must show that a maintenance check of the breathalyzer machine used had been conducted by a Type II permit holder within 35 days of the date on which the test was administered, as required by 19 CSR 25–30.031(3).' " [3] *Coyle*, 88 S.W.3d at 896 (citation omitted). Compliance with the regulations is mandatory. Id.

The director's evidence regarding the third foundational requirement for admis-

sion of a breathalyzer test, in light of Ms. Blazier's objection to the admission of the evidence, was that Patrolman Richardson holds a Type II permit and performed a maintenance check of the DataMaster at issue in this case on October 14, 2004, well within 35 days of the blood alcohol test given to Ms. Blazier on October 22, 2004. Patrolman Richardson also testified that RepCo Marketing Company, an approved supplier of simulator solution, manufactured the simulator solution he used for the maintenance check. *See* 19 CSR 25–30.051(3)(C) (listing approved suppliers of standard simulator solutions, including RepCo Marketing, Inc. of Raleigh, North Carolina). Patrolman Richardson stated that during the maintenance check, the three results produced by the DataMaster were .096, .098, and .098. Pursuant to Form 6 of section 19 CSR 25–30.031, for a calibration check, "[a]ll three tests must be within ± 5% of the standard value and must have a spread of .005 or less." Thus, Patrolman Richardson testified that when he performed his maintenance check, the instrument was operating within the guidelines established by the Department of Health and was operating properly. This court finds Patrolman Richardson's testimony sufficient evidence to satisfy the director's third foundational requirement for the introduction of the director's breathalyzer evidence. Consequently, Ms. Blazier's BAC of .189% should have been admitted and the trial court erred in failing to admit such evidence. *Coyle*, 88 S.W.3d at 896.

Nevertheless, Ms. Blazier claims that the trial court did not err in excluding the director's breathalyzer evidence based on Patrolman Richardson testimony that the certificate of analysis from the manufacturer of the simulator solution certified

---

3. Under 19 CSR 25–30.031(3), a maintenance check of the breath analyzer must be per-

formed by a Type II permit holder within thirty-five days of the blood alcohol test.

that the solution would produce a vapor alcohol value of .100 plus or minus 3%. Ms. Blazier argues that because the .096 test result Patrolman Richardson obtained during the maintenance check was outside the manufacturer's certified range of error, then either the simulator solution that Patrolman Richardson used did not perform as warranted,[4] or the DataMaster instrument did not function properly at the time of the maintenance check because it produced a result that was other than what RepCo certified. Consequently, Ms. Blazier concludes that, in either event, the machine was not functioning properly and the BAC test result was unreliable and invalid and, therefore, the trial court did not err in excluding the director's breathalyzer evidence.

The director, on the other hand, argues that the trial court erred in excluding her breathalyzer evidence because the range of error specified by the manufacturer of the simulator solution is irrelevant. Specifically, she argues that because she demonstrated that the DataMaster instrument used to test Ms. Blazier's BAC tested within the acceptable range established by the Department of Health, she laid a proper foundation that the device was approved. Therefore, the director concludes that her breathalyzer evidence should have been admitted.

As explained above, pursuant to Form 6 of section 19 CSR 25–30.031, a maintenance check of a DataMaster must include a calibration check performed by running three tests using a "standard solution." 19 CSR 25–30.031, Form 6. In relevant part, Form 6 provides: "All three tests must be within ± 5% of the standard value and must have a spread of .005 or less." *Id.* The form then identifies two possible standard solutions that may be used during the maintenance check and provides a place for the inspecting officer to indicate which of the two standard solutions was used. *Id.* The option used in this case provides: "0.100% STANDARD–MUST READ BETWEEN 0.095% AND 0.105% INCLUSIVE."

Patrolman Richardson testified that the calibration results from his maintenance check of the DataMaster produced scores of .096, .098, and .098. Each of these results is within the range of error specified on Form 6. "Proof of a maintenance check showing the machine was operating within Department of Health regulations within thirty-five days of the date of the test lays a proper foundation that the device is approved." *Reckner v. Fischer*, 121 S.W.3d 296, 302 (Mo.App. W.D.2003). Here, Ms. Blazier is complaining about a deviation that is within the margin of error established by the regulations. In support of her argument, she fails to present any authority for finding that a deviation outside the manufacturer's certified representations, but within the regulatory guidelines, causes a machine not to be approved. Regardless of the manufacturer's certified range of error regarding its simulator solution, if the director presents evidence that the relevant instrument operates within regulatory guidelines, then a proper foundation has been laid that the device is approved. *Id.*

Ms. Blazier further argues, however, that the circuit court's decision to exclude

---

4. In particular, Ms. Blazier claims that a reasonable inference to be drawn from the calibration results obtained during Patrolman Richardson's maintenance check was that there was something wrong with the simulator solution. According to current regulations, however, the only requirement regarding the standard simulator solution "is that the solution be from an approved supplier." *Lasley v. Dir. of Revenue*, 17 S.W.3d 174, 176 (Mo.App. W.D.2000) (citing 19 CSR 25–30.051). RepCo Marketing, the supplier of the simulator solution at issue in this case, is an approved supplier of standard simulator solution. 19 CSR 25–30.051(3)(C).

Ms. Blazier's BAC of .189% is supported by this court's decision in *Lasley v. Director of Revenue*, 17 S.W.3d 174 (Mo.App. W.D.2000). In that case, the director suspended the driver's driving privileges for driving with a blood alcohol concentration in excess of the legal limit. *Id.* at 175. The suspension was upheld after an administrative hearing, and the driver petitioned the circuit court for a trial *de novo*. *Id.* The case was submitted to the circuit court on stipulations, which included the breathalyzer test showing the driver's BAC to be .206%, the maintenance report for the DataMaster that tested the driver, and the certificate of analysis for the simulator solution used for the maintenance of the machine. *Id.* The driver objected to the admission of the test results on the grounds that the DataMaster was not properly maintained. *Id.* In particular, the driver argued that the maintenance report indicated that the simulator solution used to calibrate the machine had expired on April 21, 1991.[5] *Id.* In contrast, the certificate of analysis from the manufacturer of the simulator solution indicated an expiration date of April 21, 1999. *Id.* at 176. The circuit court overruled the driver's objection and admitted the documents, subject to argument regarding the expiration date. *Id.* at 175. Ultimately, the circuit court ruled in favor of the driver and set aside the director's suspension of the driver's driving privileges, finding that the maintenance of the breath analyzer instrument was improper. *Id.* at 176. The director appealed the circuit court's decision. *Id.*

On appeal, the director claimed that the circuit court erred in setting aside the suspension because he established a *prima facie* case for suspension and demonstrated that the breath analyzer used to test

the driver's BAC was properly maintained. *Id.* While noting that a certificate of analysis, including the expiration date of the simulator solution, is not required by the regulations, this court nevertheless found that "the expiration date of the solution may be relevant if the contention is that the breath analyzer falsely reported the percentage of blood alcohol in the person's blood being tested because the effectiveness of the solution expired and the solution can no longer function properly." *Id.* at 177. Moreover, this court noted that the trial court did not accept, without additional evidence, that the number "9" of the year reflecting the expiration date of the solution, as indicated on the certificate of analysis, had been erroneously copied by law enforcement as a "1" onto the maintenance report. *Id.* Thus, this court affirmed the trial court's reinstatement of the driver's driving privileges, finding that the director had failed to show that the breath analyzer used "was maintained according to the operation procedures established by the Department of Health." *Id.*

*Lasley*, however, is distinguishable from this case. In *Lasley*, the maintenance report for the breathalyzer instrument indicated that the solution used to calibrate the machine had expired. *Id.* at 177. Thus, regardless of the expiration date included on the certificate of analysis, the maintenance report suggested that the breathalyzer instrument had been maintained using an expired solution, which is inherently not in accordance with regulatory procedures. Moreover, the director presented no evidence to explain the discrepancy. The trial court was free to resolve the dispute in the evidence and find that the solution had expired.

In this case, however, the maintenance report showed no indication that the Data-

---

**5.** The driver was arrested for driving while intoxicated on September 18, 1998. *Lasley,* 17 S.W.3d at 175.

Master was not properly maintained. To the contrary, the maintenance report in this case demonstrated that the DataMaster had been properly maintained according to operating procedures established by the Department of Health. In particular, the maintenance report indicated that the three calibration checks produced results within the regulatory guidelines, i.e., ± 5%. Furthermore, in this case, both Patrolman Richardson and Officer Elkin testified that the machine was operating properly. Thus, this court finds *Lasley* distinguishable.

In sum, the director laid a proper foundation for the admission of Ms. Blazier's breathalyzer test results. Therefore, the circuit court erred in failing to admit the director's evidence of Ms. Blazier's BAC. With that evidence, the director established a *prima facie* case for suspension of Ms. Blazier's driving privileges. Accordingly, the circuit court's judgment is reversed. Nevertheless, "[b]ecause the trial court did not admit the BAC result into evidence" Ms. Blazier "did not have ample opportunity to rebut the [d]irector's prima facie case." *Coyle*, 88 S.W.3d at 896. Therefore, the case is remanded to the circuit court to provide Ms. Blazier the opportunity to rebut the director's *prima facie* case and, if the director chooses, "the opportunity to likewise rebut [Ms. Blazier's] defense."[6] *Id.*

All concur.

---

6. With regard to Ms. Blazier's opportunity on remand to rebut the director's *prima facie* case, counsel should note that a claim that the breathalyzer instrument was not operating properly "can only validly be made if supported by some evidence which at least suggests that a malfunction occurred despite adherence by the testing officer to the correct test methods." *Stuart*, 761 S.W.2d at 238. When a machine produces calibration test results "within the regulations[,] there [is] no malfunction." *Reckner*, 121 S.W.3d at 304. Therefore, the maintenance test result of .096, which was outside the manufacturer's certified range of error, is not evidence that would rebut the director's *prima facie* case.