KRP, a Minor by her Next Friend, Gleanice **BROWN**, and Gleanice Brown, Individually, Respondents,

v.

Curtis **PENYWEIT**, Appellant.

No. WD 66003.

Missouri Court of Appeals, Western District.

April 24, 2007.

Sheldon Bernstein, Kansas City, MO, for Respondents.

Karon D. Ramsey, Kansas City, MO, for Appellant.

Before SMART, P.J., and EDWIN H. SMITH and HARDWICK, JJ.

EDWIN H. SMITH, Judge.

Curtis Penyweit appeals the judgment of the Circuit Court of Jackson County, awarding the respondent, Gleanice Brown, sole legal custody of the parties' minor child, KRP, and attorney's fees in the amount of $6,628.67, in a paternity action filed by the appellant.

The appellant raises four points on appeal. The first three points attack the trial court's award of sole legal custody of KRP to the respondent, while the fourth point attacks the court's award of attorney's fees to the respondent. In Point I, the appellant claims that the trial court erred in failing to appoint a successor guardian *ad litem* (GAL) for KRP, because it violated § 452.423.2,[1] mandating the appointment of a GAL in any custody proceeding,[2] where, as here, there were alle-

---

1. All statutory references are to RSMo, 2000, unless otherwise indicated.

2. Although not necessary to our discussion, since Point II is dispositive of this appeal, it is interesting to note that § 210.830, which applies to paternity actions filed under the "Uni-

gations of abuse and neglect in the petition for custody. In Point II, he claims that the trial court erred in excluding evidence of the respondent's history of abuse of him, because it violated § 452.375.2(6), mandating that the court, in determining custody in accordance with the best interests of KRP, consider "any history of abuse of any individuals involved." In Point III, he claims that the trial court erred in granting sole legal custody of KRP to the respondent, "because the public policy of this state is to encourage parents to participate in decisions affecting the health, education and welfare of their child." In Point IV, he claims that the trial court erred in awarding the respondent $6,628.67 in attorney's fees, pursuant to § 452.355, because it was an abuse of discretion.

We affirm in part, and reverse and remand, in part.

### Facts

The respondent gave birth to KRP on October 8, 1999, in Kansas City, Jackson County, Missouri. The appellant was named as the father on KRP's birth certificate, but the parties were never married.

On August 7, 2003, the appellant filed, in the Circuit Court of Jackson County, a "Petition for Declaration of Paternity, Custody, Visitation, and Child Support," in Case No. 03FC208734, and a "petition" to be named as next friend for KRP. In Count I of his petition, he sought a declaration of the court that he was "the natural and legal father of [KRP]." In Count II, he sought joint legal and joint physical custody of KRP. In Count III, he sought an award of child support from the respondent.

On September 16, 2003, the respondent filed a "Petition for Child Custody and Parenting Time," in Case No. 03FC210197. In her petition, she sought joint legal and joint physical custody of KRP. The respondent was appointed next friend for KRP. On October 11, 2003, the respondent filed a motion to dismiss and a "Counter–Petition for Order of Child Custody, Parenting Time and Reimbursement of Necessaries." In her counter-petition, she again sought joint legal and joint physical custody of KRP. In her proposed parenting plan, *inter alia,* she provided that the appellant would have no less than two days of parenting time with KRP on alternate weeks, depending on what days he had off of work, and that KRP would spend certain holidays with each parent on alternating years. Regarding reimbursement of necessaries, she did not request a specific dollar amount, but merely stated that the appellant "has provided only minimal regular support for said minor child, [and she] has been the primary caretaker for the minor child since birth and has incurred substantial costs in raising said minor child" and requested the court order the appellant to reimburse her for necessary costs she incurred.

On November 14, 2003, the trial court overruled the respondent's motion to dismiss and consolidated Case No. 03FC210197 and Case No. 03FC208734 for trial. On December 3, 2003, the appellant filed his answer to the respondent's cross-petition and his "Cross–Petition for Determination of Father–Child Relationship, Order of Child Custody, Order of Visitation, Order of Child Support," which, essentially, was nothing more than a reiteration of his allegations in his petition of August 7, 2003.

form Parentage Act," §§ 210.817–210.852, such as Count I of the appellant's petition, contains similar language as § 452.423.2, re-

quiring the appointment of a GAL if child abuse or neglect is alleged.

On March 4, 2004, the trial court entered an order of temporary custody and parenting time, awarding the respondent custody of KRP and the appellant parenting time on Tuesdays and Thursdays, and Tuesdays and Wednesdays on alternating weeks, and on alternating weekends. On March 24, 2004, the respondent filed a motion to modify the court's award of temporary custody and parenting time, requesting permission to take KRP out of the state to visit the respondent's brother, who was experiencing health problems. There is nothing in the record indicating that this motion was ever formally ruled upon by the court.

On April 13, 2004, the appellant filed a family access motion, alleging that the respondent had denied him his temporary parenting time on five separate occasions while she and KRP were out of state visiting her brother. On April 23, 2004, the respondent filed her response to the appellant's family access motion and a motion requesting an award of attorney's fees for the attorney's fees she had incurred in responding to the appellant's family access motion. In her response, she alleged, *inter alia,* that the trial court had given her permission to take KRP out of state during a conference call. On June 9, 2004, the trial court entered an order taking the respondent's motion for attorney's fees under advisement until final judgment was entered. On October 26, 2004, the respondent filed another motion seeking to take KRP out of state to visit the respondent's brother.

On November 13, 2004, the appellant filed an application for the appointment of a GAL for KRP, alleging that the respondent and KRP's babysitter abused and/or neglected her. He argues that the appointment of a GAL was mandated because he alleged abuse and/or neglect in his application, and pursuant to § 452.423.2, "[t]he court shall appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged." On November 19, 2004, the respondent filed an amended proposed parenting plan, awarding her sole legal and joint physical custody of KRP. On November 23, 2004, the trial court entered an order appointing Laura O'Sullivan as the GAL for KRP. On March 21, 2005, O'Sullivan filed an application for leave to withdraw as the GAL for KRP due to her relocating to St. Louis for new employment. On March 25, 2005, the respondent filed her response to O'Sullivan's application stating that she had no objection to her being allowed to withdraw and the case proceeding to trial without a successor GAL. On March 26, 2005, the appellant filed his response, stating that he had no objection to O'Sullivan being allowed to withdraw and requesting the court appoint a successor GAL. On April 4, 2005, the court granted O'Sullivan's application to withdraw, but denied the appellant's request for the appointment of a successor GAL. The parties' case proceeded to trial before the court on May 6, 2005, and May 16, 2005, and was taken under advisement. On August 22, 2005, the trial court entered its judgment, declaring the appellant to be the natural and biological father of KRP, awarding the respondent sole legal custody of KRP, awarding the parties joint physical custody, adopting the respondent's proposed parenting plan, awarding the respondent child support of $735 a month, and awarding the respondent $6,628.67 of her $19,888 in attorney's fees.

This appeal follows.

# I.

Because our resolution of the issue raised in Point II renders the claims in Points I and III moot, we address it first.

■ In Point II, the appellant claims that the trial court erred in excluding evidence of the respondent's history of abuse of him, because it violated § 452.375.2(6), mandating that the court, in determining custody in accordance with the best interests of KRP, consider "any history of abuse of any individuals involved." Specifically, he claims that the trial court misapplied § 452.375.2(6), in that in excluding the evidence at trial, that the respondent "physically assaulted" him, the court erroneously declared that § 452.375.2(6) did not require admission of such evidence unless its proponent first demonstrated that the child had actually witnessed the alleged abuse. We agree.

We review a trial court's judgment in a dissolution proceeding under the same standard of review applicable in any other judge-tried case, that of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. *banc* 1976). *Vollet v. Vollet*, 202 S.W.3d 72, 74–75 (Mo. App.2006). We will affirm the judgment "unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* However, even if we find that the trial court erred, we will not reverse unless we also find that the appellant was prejudiced by the error. *Beery v. Shinkle*, 193 S.W.3d 435, 439 (Mo.App. 2006). Prejudice occurs in a judge-tried case when, in the absence of the trial error, the outcome of the case would have been different. *Id.* With respect to claimed error as to the admission of evidence, as in this point, we review the trial court's decision to admit or exclude evidence for an abuse of discretion. *Blazier v. Vincent*, 204 S.W.3d 658, 661 (Mo.App. 2006). An abuse of discretion exists "when the trial court's ruling is clearly against the logic of the circumstances, is so arbitrary and unreasonable as to shock the sense of justice, and shows a lack of care-

ful consideration." *Id.* (internal quotation marks and citation omitted).

■ Like in any other custody proceeding, in a custody proceeding joined, pursuant to § 210.829, with a paternity action, as here, the trial court is required to make a best-interests determination in accordance with § 452.375.2. *See Lampe v. Rust*, 190 S.W.3d 631, 632 (Mo.App.2006) (holding that: "In determining issues related to custody in a paternity action, the circuit court must consider the factors set forth in Section 452.375, just as it would in a dissolution of marriage action."). In that regard, § 452.375.2 provides: "The court shall determine custody in accordance with the best interests of the child." In making that determination, § 452.375.2 mandates that the court consider eight factors, including factor (6), which requires the court to consider:

The mental and physical health of all individuals involved, including *any* history of abuse of *any* individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation rights, and the parent or other family or household member who is the victim of domestic violence from any further harm[.]

(Emphasis added.)

As the appellant claims in this point, factor (6) of § 452.375.2 expressly mandates that the trial court consider "any history of abuse of any individuals involved" in determining the best interests of the child. With that as a given, he claims that his excluded evidence at trial,

that the respondent assaulted him, was relevant and admissible and that it was error for the trial court to exclude it on the basis that such evidence was limited to abuse in the presence of the child inasmuch as the statute speaks to "any" abuse, not just abuse in the presence of the child. In other words, the appellant is claiming that in excluding the evidence in question, the trial court erroneously interpreted factor (6) of § 452.375.2 as being limited to abuse in the presence of the child.

At trial, the appellant attempted to testify concerning assaults against him by the respondent to establish the respondent's history of abuse. In that regard, the record reflects:

Q: (By Ms. Ramsey) [appellant's counsel]: Has [the respondent] physically assaulted you?

A: [By the appellant]: Yes, not only me, but others.

Q: Well, let's talk about you specifically. When and how did that occur?

The respondent objected to the appellant's testimony on the basis of relevancy, arguing that unless the child was present during the abuse, such evidence was irrelevant. The trial court agreed and sustained the respondent's objection, essentially holding that unless the appellant could show that KRP was present when this alleged abuse by the respondent occurred, witnessing the abuse, then it was not relevant as a factor in determining the best interests of the child and was, therefore, inadmissible. Our reading of § 452.375.2(6), however, says otherwise.

 The interpretation of a statute and whether it applies to a given set of facts are questions of law, which we review *de novo*. *Boggs ex rel. Boggs v. Lay and Hinkle,* 164 S.W.3d 4, 23 (Mo.App.2005). In interpreting a statute, we are to ascertain the intent of the legislature and give effect to that intent, if possible. *In re*

*Boland,* 155 S.W.3d 65, 67 (Mo. *banc* 2005). In ascertaining legislative intent, we are to give the language used its plain and ordinary meaning. *Id.* "If the intent of the legislature is clear and unambiguous, giving the language used its plain and ordinary meaning, then we do not resort to statutory construction." *Scruggs v. Scruggs,* 161 S.W.3d 383, 390 (Mo.App. 2005).

Giving the language of the statute its plain and ordinary meaning, there is no language in § 452.375.2(6) that would in any way limit the court's consideration to abuse occurring only in the presence of the child. In fact, the language says just the opposite. The statute refers to "any" abuse of "any" individual involved. "Any" is a common term that is generally defined in the dictionary as meaning: "unmeasured or unlimited in amount, number, or extent." *Available at Merriam–Webster's Online Dictionary, http://www.m-w.com/ dictionary/any* (last visited April 18, 2007). Hence, given the language used in the statute, specifically, the "any" language, we interpret § 452.375.2(6) as requiring consideration of abuse occurring in or outside the presence of the child. This interpretation is consistent with the general proposition that abusive relationships are potentially dangerous to children. *Sewell– Davis v. Franklin,* 174 S.W.3d 58, 65 (Mo. App.2005).

As to what constitutes "abuse," § 452.375.2(6) does not define it, but we can look to the definition of abuse provided by § 455.010(1). *In re Marriage of Richards,* 188 S.W.3d 478, 481–82 (Mo.App. 2006). In that regard, § 455.010(1) defines "abuse" as including " '[a]ssault', purposely or knowingly placing or attempting to place another in fear of physical harm; [and] '[b]attery', purposely or knowingly causing physical harm to another with or without a deadly weapon[.]" Using this

definition of "abuse," the excluded evidence, that the respondent had assaulted the appellant, would fall within the definition of "abuse" for purposes of § 452.375.2(6). Accordingly, the trial court erred in excluding this proffered evidence as being irrelevant and inadmissible on the basis that there was no showing that it occurred in the presence of the child to be considered as evidence of factor (6).

Not all error is reversible error. *Beery*, 193 S.W.3d at 439. For error to be reversible error, there must be a showing of prejudice. *Id.* Hence, for the appellant to succeed on this point, he has the burden of demonstrating resulting prejudice from the trial court's error in excluding the evidence concerning the respondent's assaulting him. *Id.* "Prejudice occurs when the error committed by the trial court materially affects the merits of the action, the result, or the outcome of the trial." *State ex rel. Dep't of Soc. Servs., Div. of Child Support Enforcement v. Maher*, 976 S.W.2d 75, 81 (Mo.App.1998). In *Maher*, this court found that the erroneous exclusion of evidence that bears on the factors of § 452.375.2 was prejudicial, requiring reversal. In that regard, we stated:

> [A]lthough it is impossible to predict exactly what effect this type of evidence would have had on the trial court's decision in awarding ... custody, it is clear that this evidence was relevant and would have weighed in the appellant's favor. As such, we can reasonably conclude that the exclusion of this evidence hindered the appellant's being awarded custody ... and may have materially affected the outcome of the proceeding. As such, we find that the trial court's exclusion of the evidence in question was prejudicial to the appellant, requiring us

to reverse and remand the cause to the trial court for a new trial.

*Id.*

In this case, we draw the same conclusion that we did in *Maher*. Although it is impossible to know exactly what effect the evidence of the respondent's abuse of the appellant would have had on the trial court's award of sole legal custody to the respondent, it was clearly relevant and would have weighed in the appellant's favor. As such, we conclude that the exclusion of evidence of the respondent's abuse of the appellant may have materially affected the outcome of the custody proceeding, hindering the appellant's chances of being awarded joint legal custody of KRP, as he sought. Hence, we find that the trial court's exclusion of the evidence in question was prejudicial to the appellant, requiring us to reverse.

The respondent does not dispute the relevancy of the evidence in question. Rather, in her brief she contends that: (1) the issue was not properly preserved for appellate review, and (2) there was no resulting prejudice from the trial court's erroneous exclusion of the evidence. We disagree on both counts.

The respondent contends that the issue in this point was not properly preserved for appellate review in that the appellant did not make an offer of proof. Ordinarily, in order to preserve an argument that evidence was improperly excluded at trial for appeal, the proponent of that evidence is required to make an offer of proof. *Lapee v. Snyder*, 198 S.W.3d 172, 174–75 (Mo.App.2006) (holding that an offer of proof was required in order for Mother to claim on appeal that the trial court erred in excluding evidence of domestic violence against her by Father); *Maher*, 976 S.W.2d at 80 (holding that an offer of proof was required in order for

Mother to claim on appeal that the trial court erred in excluding evidence relevant pursuant to § 452.375). The purpose for requiring an offer of proof is "to ensure that the trial court and opposing counsel understand the proposed evidence and that the appellate court understands the claims of error." *Forester v. Dir. of Revenue*, 85 S.W.3d 122, 125 (Mo.App.2002). There is, however, an exception to the general rule that an offer of proof must be made to preserve an issue for appeal.

> The requirement of a formal offer of proof can be dispensed with where the nature of the witness's testimony is clear to all parties as well as to the court, and where the purpose served by the testimony is likewise clear. However, the objection must be to a specific category of evidence rather than to specific testimony.

*Maher*, 976 S.W.2d at 80 (internal quotation marks and citations omitted). That exception applies here.

From the record it is clear that, with respect to the challenged evidence, the appellant was attempting to testify as to a history of abuse by the respondent, specifically alleged acts of assault, for the purpose of showing that it was not in the best interests of KRP that the respondent be awarded sole legal custody of KRP. Likewise, the respondent's objection was as to a specific category of evidence, evidence of abuse not occurring in the presence of the child. Hence, the exception applies and the issue was preserved.

As to the respondent's contention that the appellant was not prejudiced by the trial court's refusal to admit the evidence in question, she points out that the appellant was allowed to introduce evidence that "the [respondent] had assaulted [the appellant]" and "evidence of domestic violence," since "[the appellant] testified about the [respondent] breaking into the house" such that the exclusion of the evidence was inconsequential. We disagree.

■ In support of her contention of no prejudice, the respondent relies on a portion of the trial transcript, which discloses that under questioning by his trial counsel, the appellant testified that: "Well, once was when Gleanice had broken into the house." To appreciate the import of this testimony, it has to be considered in context. In that regard, the record reads, in pertinent part:

Q [By Mr. Richart, appellant's counsel]: What happened in June of 2003?

A [By the appellant]: In June of 2003 [the respondent] had called me, as she had done in the past, and she was talking to me in concerns about continuing a relationship other than simply being the parent of the child. She wanted to pursue a relationship that would work toward the marriage.

Q: And what was your response to that?

A: I advised her that I was very apprehensive about that type of a relationship, that I thought that we should remain friends and simply work towards the betterment of the child.

Q: Were you dating someone else?

A: No, I was not dating anyone else, but I was friends with my current fiancée.

Q: What is her name?

A: Wendy Robinson.

Q: Did [the respondent] know Ms. Robinson prior to the time that you had had this conversation?

A: Yes.

Q: Did you ever observe any contact between [the respondent] and your fiancée?

A: Yes.

Q: What did you observe and when?

A: Well, once was when [the respondent] had broken into the house.

Mr. Bernstein [respondent's counsel]: Your Honor, I'm going to object. I don't really see, number one, that there's any relevancy to this unless the little kid is present. I don't know where he's heading as to what these people had—

The Court: What's the relevance?

Mr. Richart: Your honor, there's been an allegation that there's been no contact despite attempts by the respondent to have visitation during this period of time from July to the present. The evidence will support the basis as to why there is concern, and until the Court enters the order of visitation, my client is hesitant to accept visitation, and also given the concerns of the relationship of his fiancée and [the respondent], I'm trying to lay a foundation to excuse my client for his request to—

The Court: All right. I'll let you do so. Objection is overruled.

When considered in context, it is clear that the testimony of the appellant concerning the respondent breaking into an unspecified house had nothing to do with an assault or battery of the appellant. Rather, it was to explain to the trial court the difficulties the appellant was having in exercising his visitation rights with KRP. Clearly, the respondent's characterization of this evidence in her brief as evidence of an assault by the respondent on the appellant is inaccurate. Hence, her contention that the appellant was allowed to introduce similar evidence to that excluded by the trial court such that such exclusion was not prejudicial to the appellant, is without merit.

For the foregoing reasons, we reverse the trial court's award of sole legal custody of KRP to the respondent, the relief requested by the appellant, and remand the case to the court for the purpose of allowing the evidence in question, if otherwise admissible, and re-considering whether to award the parties joint legal custody or one of the parties sole legal custody, in accordance with § 452.375 and this opinion.

 Points I and III, like Point II, attack the trial court's award of sole legal custody of KRP to the respondent. In Point I, the appellant claims that the trial court erred in failing to appoint a successor GAL for KRP because it violated § 452.423.2, mandating the appointment of a GAL in any custody proceeding, where, as here, there were allegations of abuse and neglect in the petition for custody. In Point III, he claims that the trial court erred in granting sole legal custody of KRP to the respondent "because the public policy of this state is to encourage parents to participate in decisions affecting the health, education and welfare of their child." Both of these claims are rendered moot by our disposition of the claim raised in Point II. A claim is rendered moot if "something occurs that makes a court's decision unnecessary." *StopAquila.Org v. Aquila, Inc.*, 180 S.W.3d 24, 27 (Mo.App. 2005). We will not address a moot point, unless it "presents a recurring unsettled legal issue of public interest and importance that will escape review unless the court exercises its discretionary jurisdiction," *id.*, or it is likely to come up again on remand, *State v. Smith*, No. WD 66048, — S.W.3d —, —, 2007 WL 654248, at *11 (Mo.App. W.D. March 6, 2007).

Here, the appellant's Points I and III do not present recurring unsettled legal issues of public interest and importance that will escape judicial review unless we exercise discretionary jurisdiction, and the argument made in Point III does not appear likely to come up again on remand. And, while the argument made in Point I may

come up again on remand in that the appellant may file another motion to appoint a successor GAL, we cannot adequately or properly decide the issue, as the appellant may amend his motion to include additional and/or different bases and allegations supporting the appointment of a GAL under §§ 452.423.2 or 210.830. Therefore, we decline review of both Points I and III as being moot.

## II.

In Point IV, the appellant claims that the trial court erred in awarding the respondent $6,628.67 in attorney's fees, pursuant to § 452.355, because it was an abuse of discretion. Specifically, he claims that the trial court abused its discretion in that "the financial resources of the parties were nearly identical and the credible evidence demonstrated that it was the actions of respondent which caused appellant to file motion for family access" resulting in the accrual of added attorney's fees.

With respect to the award of attorney's fees and costs, Missouri courts typically follow the "American rule," under which each litigant should bear his or her own litigation expenses. *Sullivan v. Sullivan*, 159 S.W.3d 529, 541–42 (Mo.App. 2005). However, when authorized by statute, a trial court may order one party to pay the other's attorney's fees and costs. *Id.* at 542. In that regard, § 452.355.1, governing, *inter alia*, the allocation of attorney's fees and court costs in a custody proceeding, such as here, provides:

Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceed-

ing pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in the attorney's name.

Likewise, § 210.842 authorizes the court, in paternity actions filed under the Uniform Parentage Act, to:

enter judgment in the amount of the reasonable fees for counsel, experts, the child's guardian ad litem and other costs of the action and pretrial proceedings, including blood tests, to be paid by the parties in such proportions and at such times as determined by the court[.]

Hence, under either statute, the trial court here was authorized to award attorney's fees to the respondent as requested.

The trial court is considered an expert regarding the appropriateness of an award of attorney's fees. *Sullivan*, 159 S.W.3d at 542. We will not reverse such an award unless we find that the trial court has abused its discretion. *Id.* However, we presume the award is correct and that the trial court considered all of the relevant factors. *Id.* The party seeking to overturn the award of attorney's fees has the burden of overcoming that presumption on appeal. *Id.*

The appellant claims that the trial court, in awarding the respondent attorney's fees of $6,628.67, failed to consider the relative financial resources of the parties and the actions of the parties during the pendency of the action. With respect to the relative financial resources of the parties, the appellant claims that the trial court overlooked the fact that the parties' financial resources were essentially identical, in that they were both employed by the Kansas City, Missouri, Police Department and had

identical base salaries, and that they both earned extra money doing security work. He also points out that the trial court failed to consider that he was responsible for the extraordinary medical expenses for a child who was not a party to this action. With respect to the actions of the parties during the pendency of the case, the appellant claims that the trial court failed to consider, in its award of attorney's fees, that the respondent's attorney's fees were incurred, in part, due to her interfering with his visitation rights.

In awarding attorney's fees to the respondent, the trial court was not requested to make, and did not make, any express findings of fact or conclusions of law. It simply stated that it considered all relevant factors in arriving at its award. Hence, we have no way of knowing exactly the factors relied upon by the trial court in arriving at its award, but, in accordance with Rule 73.01(c), we are to consider all findings as made in accordance with the result the trial court reached in its judgment. *Youngberg v. Youngberg,* 194 S.W.3d 886, 890 (Mo.App.2006).

Although the appellant claims that he and the respondent essentially had the same monthly incomes, such that each party should be responsible for his or her own attorney's fees in this action, the record reflects that the trial court actually found otherwise in determining its award of child support. In that regard, the trial court found that the appellant had monthly income of $5,503 and that the respondent had monthly income of $4,850, a difference of $653 per month, which would favor an award of attorney's fees to the respondent. *See Sullivan,* 159 S.W.3d at 543 (stating that "taking into account the respondent's significant non-marital debt and the fact that the appellant's monthly salary was $300 higher than the respondent's justifies an award of attorney's fees to the respondent."); *McNair v. McNair,* 987 S.W.2d 4,

8 (Mo.App.1998) (stating "One [party's] greater ability to pay is sufficient to support an award of attorney's fees to the other [party].").

With respect to the respondent's alleged improper conduct of denying the appellant his visitation rights with KRP, driving up her attorney's fees, the respondent's evidence demonstrates that of the $19,888 in attorney's fees requested, only $300 was incurred in response to the appellant's motion to enforce his temporary visitation rights. The trial court was free to believe that evidence in awarding attorney's fees. *See Dowell v. Dowell,* 203 S.W.3d 271, 283 (Mo.App.2006) (stating "The trial court is in the best position to judge the credibility of witnesses and is free to believe or disbelieve all, part or none of the testimony of any witness."). Hence, we fail to see how the trial court's alleged failure to consider the respondent's potential fault in causing her own attorney's fees was a deciding factor in the court's award of attorney's fees to the respondent.

In summary, the appellant points to nothing in the record that would overcome the presumption that the trial court's award of attorney's fees to the respondent of $6,628.67 was proper.

Point denied.

## Conclusion

The judgment of the trial court awarding the respondent attorney's fees of $6,628.67 is affirmed. The judgment of the court awarding the respondent sole legal custody of KRP is reversed and is remanded to the court for further proceedings in accordance with this opinion.

SMART, P.J., and HARDWICK, J., concur.