

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| PAUL A. HINSHAW, | ) | |
| Respondent, | ) | |
| v. | ) | **WD76919** |
| | ) | |
| M-C-M PROPERTIES, LLC, et al., | ) | FILED:  December 9, 2014 |
| Appellants. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY
### THE HONORABLE MARY (JODIE) C. ASEL, JUDGE

### BEFORE DIVISION ONE: MARK D. PFEIFFER, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND KAREN KING MITCHELL, JUDGES

M-C-M Properties, LLC ("M-C-M") appeals the circuit court's interpretation of a deed that grants Paul Hinshaw an easement for ingress and egress over M-C-M's property.  For reasons explained herein, we reverse the circuit court's judgment and remand this matter for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL HISTORY

M-C-M owns property located at 1407 Ross Street in Columbia, Missouri.  Hinshaw owns the property situated directly to the west at 1403 Ross Street.  The dispute between the parties centers around language in a 1924 deed that grants Hinshaw an easement over the entirety of M-C-M's property "to lay, maintain, and operate a sewer together with the right for ingress and egress on and over and

through" M-C-M's property. Interpreting the language of the 1924 deed, we must determine whether the "right for ingress and egress" is incidental to the easement to "lay, maintain, and operate a sewer," or is instead a general ingress and egress easement independent from the sewer easement.

On October 7, 1924, J.R.C. Schwabe and his wife conveyed property that is now known as 1403 Ross to Frank Naylor by deed. The property conveyed was legally described as:

> A part of Lots Number Six (6) and Seven (7) in Bouchelle's Addition to the City of Columbia, Missouri, described as follows: Beginning at a point 116 feet 8 inches East of the Southwest corner of Lot Number Six (6), thence North parallel with Lee Street one hundred Thirty-two (132) feet five (5) inches, thence *West* parallel with Ross Street fifty eight (58) feet four (4) inches, thence South parallel with Lee Street One Hundred Thirty Two (132) feet five (5) inches, thence *East* Fifty-eight (58) feet four (4) inches to point of beginning.

(Emphasis added.) The deed then separately granted an easement to Mr. Naylor. The easement language in the 1924 deed reads in pertinent part:

> Party of first part hereby grants to party of second part his heirs or assigns an easement to lay, maintain and operate a sewer *together with* the right of ingress and egress on and over and through the following described lands, to-wit: A part of lots 6 and 7 in [Bouchelle]'s Addition to the City of Columbia, Missouri, beginning at a point 116 feet 8 inches East of the Southwest corner of Lot 6, thence North parallel with Lee Street 132 feet 5 inches, thence *East* 58 feet 4 inches, thence South 132 feet 5 inches, thence *West* 58 feet 4 inches to point of beginning.

(Emphasis added.) The effect of the conveyance language was to deed Mr. Naylor fee simple title to the tract now known as 1403 Ross, and to grant Mr. Naylor easement rights over the entirety of a tract of virtually identical size lying

2

immediately to the east of 1403 Ross. The tract over which the easement rights were granted is now known as 1407 Ross.

Frank Naylor owned the dominant property at 1403 Ross until his death. On July 12, 2000, the property was conveyed to Hinshaw by a trustee's deed.[1] The servient property at 1407 Ross was earlier conveyed to M-C-M on January 2, 1998, "subject to the easements and restrictions of record"—which included the easement established in the 1924 deed.

The current dispute between the parties arose from the use of a driveway located on M-C-M's property. The driveway is a "U-shaped" driveway that enters from Ross Street onto Hinshaw's property, wraps around the house situated on Hinshaw's property, and exits through M-C-M's property back onto Ross Street, running parallel to the east/west property line between the two tracts. Hinshaw testified that because tenant vehicles would often block the portion of the driveway located on his property, he and his maintenance personnel would use the portion of the driveway located on M-C-M's property in order to access his own property. Hinshaw testified that he had used the driveway on M-C-M's property in such a manner since he purchased his property in July 2000. In September 2010, however, M-C-M placed a fence near the property line between the two properties,

---

[1] The trustee's deed did not expressly convey the easement, and instead only conveyed the tract owned in fee simple by Frank Naylor. However, the grant of the easement to Mr. Naylor in 1924 included a grant to his "heirs and assigns," language we have consistently construed to create an easement appurtenant that runs with the dominant tenement. *Beiser v. Hensic*, 655 S.W.2d 660, 662 (Mo. App. 1983). An easement appurtenant "passes with the conveyance of the dominant tenement whether or not specifically conveyed in the deed." *Brown v. Redfern*, 541 S.W.2d 725, 730 (Mo. App. 1976).

3

blocking Hinshaw's access to the portion of the driveway located on M-C-M's property.

On September 1, 2011, Hinshaw filed suit in the Boone County Circuit Court, seeking damages for interference with the easement rights set forth in the 1924 deed; to enjoin M-C-M from interfering with Hinshaw's right to ingress and egress on the portion of the driveway situated on M-C-M's property; and alternatively for adverse possession of the portion of M-C-M's property being used by Hinshaw as a driveway. Hinshaw claimed that the 1924 deed granted a general ingress and egress easement over the 1407 Ross tract. M-C-M brought a counterclaim seeking to eject Hinshaw from the M-C-M property as well as to quiet title. The parties submitted the 1924 deed to the circuit court for interpretation.

The court concluded that the language of the deed unambiguously gave Hinshaw "an easement to (lay,) maintain and operate a sewer *and also* an easement for ingress and egress on and over and through the land now known as 1407 Ross Street..." (emphasis added). Accordingly, the court permanently enjoined M-C-M from obstructing, interfering with, or denying Hinshaw the right to use both easements. The court entered judgment for M-C-M on Hinshaw's claim for interference with the easement rights as Hinshaw put on no evidence of damages, and dismissed the alternatively pled adverse possession count.[2] M-C-M now appeals the judgment and the circuit court's interpretation of the 1924 deed.

---

[2]The counterclaims asserted by M-C-M were not expressly addressed by the trial court's judgment but were ruled in Hinshaw's favor by necessary implication. *Glick v. Glick*, 372 S.W.2d 912, 915

4

On appeal of a court-tried case, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). A matter involving interpretation of a deed is a question of law that is reviewed *de novo* and without deference to the trial court's interpretation. *Erwin v. City of Palmyra*, 119 S.W.3d 582, 584 (Mo. App. 2003). However, we defer to the trial court on factual matters, and all issues of fact on which the court has not made a specific finding are considered as having been found in accordance with the result reached. *Reyner v. Crawford,* 334 S.W.3d 168, 172 (Mo. App. 2011); Rule 73.01(c).

## ANALYSIS

**Interpretation of the 1924 Deed**

In Points I and II, M-C-M contends that the circuit court incorrectly interpreted the language of the 1924 deed, which reads in pertinent part:

> Party of first part hereby grants to party of second part his heirs or assigns an easement to lay, maintain and operate a sewer *together with* the right of ingress and egress on and over and through the following described lands, to-wit: [land description which encompasses M-C-M's entire property]. (emphasis added).

M-C-M first contends that the phrase "together with" is susceptible of more than one meaning, and is therefore ambiguous. The trial court interpreted the phrase to mean "and also." This interpretation is consistent with *Webster's Third*

---

(Mo. 1963) (holding that where judgment by implication disposes of a counterclaim, judgment is final even though the judgment does not reference disposition of the counterclaim).

*New International Dictionary,* p. 2404, which defines the phrase "together with" as meaning "along with: in addition to: as well as." Alternatively, M-C-M notes that *Black's Law Dictionary*, 6th Edition defines "together" as "in union with." M-C-M argues that the use of this definition suggests that the right of ingress and egress on M-C-M's property is incidental to the right to lay, maintain, and operate a sewer—not a "blanket easement for ingress and egress purposes." Thus, M-C-M claims that the trial court erroneously interpreted "together with" to mean "and also."

In Point II, M-C-M further contends that the court's interpretation was unreasonable because there was no evidence that the intent or purpose of the 1924 deed was to create two separate easements. M-C-M points out that the 1403 Ross property had access to Ross Street at the time the easement was conveyed and, as such, there was no need for an easement across the 1407 Ross property for additional ingress and egress.

Collectively, Points I and II on appeal argue that the trial court erred in concluding that the language in the 1924 deed granting rights of ingress and egress created a general ingress and egress easement over the entire tract now known as 1407 Ross instead of limited rights of ingress and egress related to laying, maintaining and operating a sewer.

The cardinal rule regarding an interpretation of a deed is to ascertain the intention of the parties and to give that intention effect. *Dean Machinery Co. v. Union Bank*, 106 S.W.3d 510, 520 (Mo. App. 2003). When interpreting

6

easements, the intention of the grantor must be ascertained from the instrument itself. *Erwin*, 119 S.W.3d at 584–85. Only when the language is "unclear and ambiguous may we resort to rules of construction and consider extrinsic evidence." *Id.* at 585 (internal quotations omitted). The language of a deed is ambiguous when the terms are susceptible of more than one meaning "so that reasonable persons may fairly and honestly differ in their construction of the terms." *Id.* However, the language of a deed is not ambiguous simply because the parties disagree about its meaning. *Blackburn v. Habitat Dev. Co.*, 57 S.W.3d 378, 386 (Mo. App. 2001).

We find no ambiguity in this deed and, thus, are limited to determining the property owners' intent from the deed alone. There is only one reasonable meaning ascribable to the terms of the deed. On its face, the deed grants two separate easements: an easement for sewer purposes "together with" an easement for ingress and egress.

The more difficult question relates to whether the two separate easements were intended to be independent of, or related to, one another. M-C-M contends that the phrase "together with" indicates an intention only to clarify that the easement holder has the right of ingress and egress on M-C-M's property for purposes of laying, maintaining, and operating a sewer. Hinshaw argues that "together with" implies a separate and independent ingress and egress easement.

The description of both easements in the same sentence connected by the phrase "together with" indicates the intent to convey related, and not independent,

7

easements.  The dictionary common definition of "together with" adopted by the trial court is not inconsistent with this conclusion.  Whether "together with" is construed to mean "and also," or "along with," or "in union with," the intent expressed is to convey two easements that are related in some fashion.

In fact, it is customary for an easement granting the right to install a transmission line or utility to express as well the concurrent conveyance of a related **secondary** ingress and egress easement to permit the access reasonably necessary to maintain the primary easement.  *See, e.g., Williams Pipeline Co. v. Allison & Alexander, Inc.*, 80 S.W.3d 829, 832 (Mo. App. 2002) (where easement granted pipeline company "the right to lay, maintain, operate, re-lay and remove at any time a pipeline or pipelines . . . **with right of ingress and egress to and from the same, on, over and through**" servient property) (emphasis added); *Barfield v. Sho-Me Power Elec. Co-op*, 14,893 W.D.Mo., 2014 WL 1289629, *10 (March 31, 2014) (noting language in "common forms" of transmission line easements included the right to "erect, operate, maintain, repair, rebuild, and patrol . . . one or more electric transmission lines . . . **together with the right of ingress and egress to, from, and over said lands for doing anything necessary or useful** to the enjoyment of the easement herein granted") (emphasis added).[3]  Though an

---

[3]In fact, courts routinely imply the secondary easement for ingress and egress as a matter of necessity where it is not expressed.  *See, e.g., Missouri-Kansas-Texas R. Co. v. Freer*, 321 S.W.2d 731, 740 (Mo. App. 1958) (noting that grant of right-of-way easement to construct railroad "includes the incidental use of loading and unloading of freight . . .together with the necessary right of ingress and egress and the right of passage over the right of way for that purpose"); *Shrull v. Rapasardi*, 517 P.2d 860, 862 (Colo. App. 1973) ("If the owner of the dominant estate does not unnecessarily inconvenience the owner of the servient estate and use of the easement is not expanded, the owner of the dominant estate may do whatever is reasonably necessary for the

8

easement to install or lay a transmission line or utility, and a related ingress and egress easement are two separate easements, the secondary ingress and egress easement is nonetheless limited in its scope and purpose to servicing the primary easement. *Barfield*, 2014 WL 1289629 *10 (holding that right of ingress and egress to do anything necessary for enjoyment of transmission line easement "does not give the easement holder unlimited discretion," and that instead the easement holder has only those "rights necessary to the operation and maintenance of electric transmission lines and nothing more"); *State ex rel. State Highway Comm'n v. S. Dev. Co.*, 509 S.W.2d 18, 32 (Mo. 1974) (holding the right to enter servient estate to effect repairs on or to install primary easement is a secondary easement, that "can be exercised only when necessary, and in such a reasonable manner as not to increase needlessly the burden on . . . the servient estate").

The circumstances in this case are very similar to those in *Panhandle E. Pipe Line Co., L.P. v. Gray*, 2013 WL 4875026 (C.D. Ill. 2013). In that case, a 1933 deed granted "the right to lay, maintain, alter, repair, replace, operate and remove . . . a pipe line for the transportation of natural gas . . . **with the right of ingress and egress to and from the same on, over and through**" a servient tract. *Id*. at *1 (emphasis added). The specific location of the pipeline was not identified in the grant. *Id*. The owner of the dominant tract argued that it had an "open" ingress

---

enjoyment of the easement, including repairs, ingress and egress, with space therefor as exigency may show."); 25 Am. Jur. 2d *Easements and Licenses,* section 73 (describing secondary easements as incident to primary easement and permitting access only when necessary and in such manner as is reasonable to effect necessary repairs).

and egress easement over the servient tract, and thus rights of ingress and egress over all or any portion of the servient tract. *Id*. at *6. The court disagreed.

> Plaintiff cannot argue it has rights beyond what is reasonably necessary for the purpose of the easement. The easement is the right of use, not a portion of [the] land itself, and certainly not a purchase of [the] land in fee simple. The language in the easement agreement grants "the right to lay, maintain, alter, repair, replace, operate and remove . . . a pipe line" as well as the "right of ingress and egress" over the described property. . . . ***[N]ow that the pipeline is laid, Plaintiff's right of use is spatially limited because the purpose of the easement revolves around the location of the pipeline. Thus, the "open easement" argument is without merit***.

*Id*. (emphasis added).

The case before us is also similar to the circumstances in *DeRossett v. Duke Energy Carolinas, LLC*, 698 S.E.2d 455 (N.C. App. 2010). There, a consent judgment in a condemnation proceeding adjudged a utility to be "the owner of an easement over and upon the lands of the respondents . . . together with the rights of ingress and egress . . . ." *Id*. at 652–53. In resolving a dispute over the grant of ingress and egress rights, the court concluded:

> The literal language of the consent judgment makes explicit reference to granting [dominant tract owner] rights in the tract of property on which the transmission line was constructed "***together with the rights of ingress and egress***." In light of that language, we conclude that the trial court correctly determined that the consent judgment created two separate easements. First [an easement of right of way for the transmission line] in which the transmission line was to be located. Secondly, by granting "the rights of ingress and egress described in the petition," the easement set out in the consent judgment expressly authorized [dominant tract owner] to cross the portion of [servient tract] located outside the limits of the primary easement for appropriate purposes. The separate and distinct nature of "the rights of ingress and egress" specified in the consent judgment is confirmed by the use of the words "together with," which clearly imply the grant

10

of a right in the property owned by [servient tract owner] other than the right to occupy the strip of land on which the transmission line was to be built. ***The separate right of ingress and egress granted in the consent judgment allows [dominant tract owner] and its successors to construct, repair and maintain the transmission lines located on the land encumbered with the primary easement by entering upon other portions of [the servient tract] to the extent necessary to obtain access to the property subject to the primary easement***.

*Id*. at 654–55 (emphasis added).

We thus conclude that although the trial court correctly held that the language in the 1924 deed conveyed two separate easements, it erroneously concluded that the ingress and egress easement permitted general access over 1407 Ross. Instead, the ingress and egress easement is a secondary easement whose purpose and scope is limited to entry upon the servient tract to the extent necessary to repair or maintain the sewer permitted by the primary easement.

Points I and II are granted. However, this conclusion begs the question addressed by M-C-M's Point III on appeal questioning the trial court's failure to specify a location for the ingress and egress easement granted by the 1924 deed.

**Location of the Easement**

In Point III, M-C-M also argues that the circuit court erred in granting a blanket ingress and egress easement that failed to fix the specific location for accessing the property at 1407 Ross. The 1924 deed described the land subject to both the sewer and the secondary ingress and egress easement as the entirety of M-C-M's property—a tract that is roughly equivalent in dimension to Hinshaw's property to the west. The circuit court ruled that Hinshaw's right to ingress and

11

egress extended "on and over and through the land now known as 1407 Ross Street," effectively giving Hinshaw the right of ingress and egress over M-C-M's entire property. Furthermore, the circuit court permanently enjoined M-C-M from "obstructing, interfering with, or denying" Hinshaw the right to use the easement. M-C-M argues that such a result is unreasonable because it creates a "cloud on title" over the entirety of the property at 1407 Ross Street. M-C-M also argues that it will not be able to make reasonable use of its own property without fear of violating the circuit court's order. M-C-M urges this court to fix a definite location for such an easement, so that Hinshaw does not have a blanket easement over the whole property.

We have already explained that the trial court erroneously concluded that the ingress and egress easement was a separate easement unrelated to the sewer easement. Because the ingress and egress easement is a secondary easement, its location "is spatially limited" to an area that "revolves around the location of" the sewer. *Panhandle*, 2013 WL 4875026, at *6. It was thus error to characterize the ingress and egress easement as, effectively, an "open" easement over the entirety of the 1407 tract. *Id*.

Here, the 1924 deed did not fix the location of the sewer. The law is well-settled that an easement can be created even though its precise location is not fixed contemporaneously therewith. *Beery v. Shinkle*, 193 S.W.3d 435, 440 (Mo. App. 2006). If the location of the easement is not initially known from the express

12

grant, the location may be subsequently fixed by: (1) express agreement between the parties; or (2) a selection that can be inferred by proof of prior use. *Id.* at 441.

Here, no evidence was presented about the actual location of the sewer installed pursuant to the primary easement granted by the 1924 deed. Until the actual sewer location is determined, the location of the secondary easement granting rights of ingress and egress necessary to access the sewer cannot be established. More to the point, there is no evidence indicating that the driveway being used by Hinshaw on the 1407 tract corresponds with the location of the sewer, or of a secondary easement revolving around the location of the sewer. Even if it does, the secondary ingress and egress easement is limited in its scope to the purpose of the grant—the right to access the sewer—a purpose that does not appear to be consistent with general use of the driveway for the convenience of routine access to 1403 Ross. *See Reinbott v. Tidwell*, 191 S.W.3d 102, 111 (Mo. App. 2006) ("[T]he holder of an easement . . . is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude."); *Missouri-Kansas-Texas R. Co. v. Freer*, 321 S.W.2d 731, 738 (Mo. App. 1958) (holding that "right to use" an easement "is limited to . . . that permitted by the grant; and the burden of servitude cannot be increased beyond that given by the grant").

The trial court erred, therefore, in granting injunctive relief that affords Hinshaw an ingress and egress easement over the entirety of M-C-M's tract, and

13

that presumes the location of the driveway corresponds with the proper location of the secondary ingress and egress easement in fact granted by the 1924 deed.

Point III is granted.

## CONCLUSION

The trial court's judgment granting injunctive relief is reversed. This matter is remanded for further proceedings to fix the location of the primary easement for the sewer over the property located at 1407 Ross, and to correspondingly fix the location of the secondary easement as is reasonably necessary to permit Hinshaw to maintain and repair the sewer.[4] On remand, the parties shall be permitted to seek leave to amend or reinstate the pleadings with regard to any claims, such as Hinshaw's adverse possession claim or M-C-M's counterclaims, that were not previously ruled upon by the trial court on the merits.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

---

[4]We express no opinion as to whether the easements granted by the 1924 deed may have been abandoned should the evidence on remand indicate that no sewer was ever installed pursuant to the primary easement, or that a sewer was installed but is no longer in use. The trial court is free to address the issue of abandonment on remand.

14