

# Missouri Court of Appeals

### Southern District

#### In Division

Michael A. Predovic, Marilyn M. Predovic, )
Paul R. Etheridge, Elizabeth A. Etheridge, )
Timbermill Homeowners Association, )
      )
           Appellants, )
      ) No. SD37922
      vs. )
      ) FILED: February 14, 2024
The Empire District Electric Co., and )
Chuck Pennell, Assessor, Taney County, Missouri, )
      )
           Respondents. )

#### APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

#### Honorable Jessica L. Kruse, Judge

#### **REVERSED AND REMANDED WITH DIRECTIONS**

Under various legal theories, Michael A. Predovic, Marilyn M. Predovic, Paul R. Etheridge, Elizabeth Etheridge, and Timbermill Homeowners Association (collectively "Appellants") seek to establish title to certain real estate ("the Property") located on Lake Taneycomo. The Empire District Electric Company ("Empire") disputes Appellants' claims of ownership and contends it acquired and maintains fee simple title to the Property. On remand from this Court's previous summary judgment reversal, *see **Predovic v. Empire Dist. Elec. Co.**,* 603 S.W.3d 366 (Mo.App. 2020), the parties again filed cross-motions for summary judgment and Empire again received summary judgment in its favor. Appellants appeal this new summary

judgment on various grounds.  Because we find merit in Appellants' third point, asserting that the circuit court erred in concluding the deed upon which Empire relies conveyed fee simple title, we reverse and remand.

## Standard of Review

A summary judgment, which we review *de novo*, is proper only if the movant establishes there is no genuine issue as to the material facts and the movant is entitled to judgment as a matter of law.  ***Green v. Fotoohighiam***, 606 S.W.3d 113, 115 (Mo. banc 2020).  The interpretation of a deed is also an issue reviewed *de novo*.  ***Hinshaw v. M-C-M Props., LLC***, 450 S.W.3d 823, 826 (Mo.App. 2014).

## Factual and Procedural Background

All parties claim to have an interest in the Property through chains of land conveyances beginning with Eli and Lola Hoenshel ("the Hoenshels").  Empire bases its claim to fee simple title on a 1912 conveyance by quitclaim deed ("the 1912 Deed") by the Hoenshels to Ozark Power & Water Company ("Ozark Power") and, therefore, concedes the materiality of such deed to the circuit court's summary judgment.  As set out in the premises of the 1912 Deed,[1] "for and in consideration of the sum of Twelve Hundred Dollars," the Hoenshels "remise, release and forever quit claim" to Ozark Power "and unto its successors and assigns" the Property (amounting to 22.9 acres between the right bank of the White River and an elevation of 715 feet above sea level).  This conveyance is then described in the premises as being "all for lake purposes in connection with the dam being constructed in said White River" for Ozark Power with the Hoenshels "reserving the right to move back fences" on the Property and "retaining the

---

[1] "Premises" refers to "[t]he part of a deed that describes the land being conveyed, as well as naming the parties and identifying relevant facts or explaining the reasons for the deed." *Premises*, BLACK'S LAW DICTIONARY (11th ed. 2019).

2

right to occupy" the Property "down to the actual water line of said lake (according to the rise and fall of said lake water), for themselves and assigns."

Following the 1912 Deed's premises is a habendum clause,[2] beginning with the language, "[t]o have and to hold" the Property "with all the rights, immunities, privileges and appurtenances thereto" belonging to Ozark Power "and unto its successors and assigns, [f]orever[.]"  The habendum clause continues by stating that neither the Hoenshels "nor their heirs, nor any other person for them or [on] their behalf, shall or will hereafter claim or demand any right or title" to the Property "but they shall by these presents be forever barred and excluded[.]"  The habendum clause does not contain the "all for lake purposes" language found in the premises but it does restate that the conveyance is "subject to the said right reserved by the [Hoenshels] to remove the fences and to occupy said land down to the actual water line as aforesaid, at their own risk of damage whatsoever."

It is uncontroverted that the Hoenshels executed the 1912 Deed and Ozark Power subsequently conveyed its interest acquired therefrom to Empire.  What is at issue, however, is the legal effect of the 1912 Deed.  In its summary judgment, the circuit court agreed with Empire that the 1912 Deed conveyed to Ozark Power fee simple title but with the Hoenshels reserving certain enumerated rights.  Appellants contend, and we agree, that the 1912 Deed "conveyed nothing more than a flowage easement, in that the conveyance was limited by its restriction of the grant 'for lake purposes[.]'"

---

[2] A habendum clause is defined as "[t]he part of an instrument, such as a deed or will, that defines the extent of the interest being granted and any conditions affecting the grant. *Habendum Clause*, BLACK'S LAW DICTIONARY (11th ed. 2019).  "Also termed *to-have-and-to-hold clause*." ***Id.***

**Discussion**

"Fee title 'is an estate without end or limitations and the largest estate a person can possibly have.'" ***Kimberling North, Inc. v. Pope***, 100 S.W.3d 863, 873 (Mo.App. 2003) (quoting ***Long v. Kyte***, 340 S.W.2d 623, 630 (Mo. 1960)). In contrast to fee title, "an easement is 'the mere right of a person to use for a definite purpose another's land in connection with his or her own land.'" ***Id.*** (quoting ***Mahnken v. Gillespie***, 43 S.W.2d 797, 800-01 (Mo. 1931)). "An easement therefore 'is not the complete ownership of land with the right to use it for all lawful purposes perpetually and throughout its entire extent,' but, instead, is a right that extends 'only to one or more particular uses.'" ***Id.*** (quoting ***Farmers Drainage Dist. of Ray Cnty. v. Sinclair Refining Co.***, 255 S.W.2d 745, 748 (Mo. 1953)).

First and foremost, Appellants point to the fact that the 1912 Deed states that the conveyance is "all for lake purposes" in connection with damming the White River. Such language suggests the Hoenshels intended an easement to Ozark Power for the purpose provided, not a grant of fee. *Cf.* ***Schuermann Enterprises, Inc. v. St. Louis Cnty.***, 436 S.W.2d 666, 669 (Mo. 1969) (construing conveyance "for right of way" as easement only); ***Lloyd v. Garren***, 366 S.W.2d 341, 345 (Mo. 1963) (construing conveyance "for the purpose of constructing and maintaining a state highway on said land according to the plans of the State Highway Commission" as clearly indicating "what was being conveyed was less than a fee; namely, an easement for the purpose named" (internal quotation marks omitted)). We note "the expression or limitation of the use to which the property is to be put is a *decisive factor* in determining if it is an easement or the grant of a fee." ***G. M. Morris Boat Co. v. Bishop***, 631 S.W.2d 84, 88 (Mo.App. 1982) (emphasis added).

4

Empire suggests the "all for lake purposes" qualification should be ignored. In support, Empire cites two cases that upon examination prove to be inapposite. The first case, *Powell v. St. Louis Cnty.*, involved the conveyance of a strip of land with the deed providing that, "after a Railroad shall be built and put in operation along said strip," there would be certain conditions for the construction and maintenance of structures on the strip. 446 S.W.2d 819, 821 (Mo. 1969). The grantor argued that this deed conveyed only an easement, relying on *Schuermann*. *Id.* at 822. But our high court observed that the deed contained no language that the interest conveyed was a "right of way" and imposed no other limitation upon the grantees' use of the property. *Id.* The "covenants" that the grantor had relied upon "relate[d] only to the obligation of the grantee *in the event* that a railroad was constructed on the land." *Id.* (emphasis added). Here, by contrast, the expression that the land is to be used "all for lake purposes" is clearly provided.

There was no allegation of an easement whatsoever in the second case Empire relies upon, *Fuchs v. Reorganized Sch. Dist. No. 2 Gasconade Cnty.*, 251 S.W.2d 677 (Mo. 1952). Rather, the grantor argued that, instead of fee simple title, the deed conveyance (stating the purpose of the conveyance was for grantee to keep and maintain a public-school house) amounted to a *determinable fee* subject to reverter. *Id.* at 679. In rejecting this claim, our high court observed that "[t]he deed contains no express exception or reservation, no express limitation upon the duration of the estate conveyed, no express condition upon which the estate was conveyed, and no express provision for forfeiture, for re-entry, or for reverter." *Id.* "It is well established that language which merely states the purpose for which land is conveyed and which does not contain words which relate to time, does not create a determinable fee." *Id.*; *see also City of Carthage, Jasper Cnty. v. United Mo. Bank, N.A.*, 873 S.W.2d 610, 613 n.3

5

(Mo.App. 1994) ("Words used to create such an estate are 'so long as,' 'while,' 'during,' 'until,' and the like."). Because Appellants argue that the 1912 Deed conveyed a flowage easement, not a determinable fee, ***Fuchs*** simply has no application here.

Additionally, Empire observes that the Hoenshels knew how to convey "flowage rights" because they did so in an earlier 1911 deed by expressly using those terms. Empire further observes that no reference to "flowage" or an "easement" can be found anywhere in the 1912 Deed. We note, however, that "[t]he rules of construction provide for the admission of extrinsic evidence when construing a conveyance only if the language of the deed is unclear and ambiguous." ***Robert Jackson Real Estate Co. v. James***, 755 S.W.2d 343, 346 (Mo.App. 1988). "The intention of the grantor is to be determined by the language contained in the deed unless an ambiguity exists." ***Id.*** Thus, barring such an ambiguity in the 1912 Deed, which Empire affirmatively asserts and concedes there is none, any reliance on another deed or any other extrinsic evidence is improper.[3] Moreover, the absence of the terms identified by Empire in the 1912 Deed is inconsequential if an easement is otherwise implied therein. *See **Wallace v. Byrne***, 672 S.W.3d 96, 108 (Mo.App. 2023) (stating that the conveyance of an easement can be express *or* implied).

Returning to the 1912 Deed, Empire argues there are certain provisions supporting the conclusion that the Hoenshels intended to convey fee title, and not an easement, to Ozark Power. Empire points to the language, "remise, release and forever quit claim" as sufficient to transfer fee simple title. We agree that "a quitclaim deed is as effective as any other deed for the purpose of transferring title." ***Humphrey v. Sisk***, 890 S.W.2d 18, 21 (Mo.App. 1994). But, typically, the intent to convey an indefeasible estate in fee simple "is done by using the words 'grant, bargain,

---

[3] We also reject the arguments by Appellants that similarly rely on extrinsic evidence in their attempt to show that the Hoenshels intended to convey an easement.

and sell' in the granting clause of the deed." ***La Near v. CitiMortgage, Inc.***, 364 S.W.3d 236, 241 n.6 (Mo.App. 2012). The problem with Empire's reliance on "remise, release and forever quit claim" is that "[s]uch words are not sufficient to establish the grantor's intent to convey indefeasible estate in fee simple." ***Id.*** The word "remise" simply means "[t]o give up, surrender, or release (a right, interest, etc.)[,]" *Remise*, BLACK'S LAW DICTIONARY (11th ed. 2019), and, therefore, it can apply with equal measure to easement and fee title conveyances alike.

Empire further argues the use of the words "forever" and "successors and assigns" show that the Hoenshels intended to permanently part with fee title and convey it to Ozark Power. Again, this argument ignores that such words can also apply to easements. *See* ***Wallace***, 672 S.W.3d at 107 (stating that "[w]ords such as 'heirs, assigns, perpetual, and permanent' indicate a desire to create an easement appurtenant"); ***Beiser v. Hensic***, 655 S.W.2d 660, 662 (Mo.App. 1983) (stating that "words such as 'heirs,' 'assigns,' and 'forever' . . . indicate[] the parties intended use of the roadway to be a 'perpetual' incident of possession . . ." and "the apparent intention of the parties was to convey and warrant an easement and not a title in fee simple").

The remaining language upon which Empire relies is found within the 1912 Deed's habendum clause. Here, the specific "all for lake purposes" language found within the 1912 Deed's premises is absent. The following language, however, is present and, according to Empire, is consistent with a transfer in fee: the grant of the Property to Ozark Power "with all the rights, immunities, privileges and appurtenances thereto"; the Hoenshels' agreement to never "claim or demand any right or title" to the Property; and the Hoenshels' agreement to "be forever barred and excluded" from the Property. This argument is without merit because it ignores that "[i]n the event of inconsistency, the provisions of the premises of a deed generally prevail over the habendum." ***Bullock v. Porter***, 284 S.W.2d 598, 602 (Mo. 1955). Thus, even if we accept

7

that the habendum clause, by way of *some* of its formal language, suggests a title transfer in fee, such language is not sufficient to overcome the Hoenshels' expression of intent in the premises that the Property was conveyed "all for lake purposes" to Ozark Power.  *Cf. **Denny v. Regions Bank***, 527 S.W.3d 920, 928 (Mo.App. 2017) (involving a similar habendum clause where the court held that such clause was insufficient to void express reservation of a life estate in a deed); ***Bedard v. Scherrer***, 221 S.W.3d 425, 431 n.4 (Mo.App. 2006) (involving a similar habendum clause where the court held that the deed at issue conveyed an easement because it contained "right of ingress and egress" language consistent with an easement).  Empire further ignores in the habendum that the grant to Ozark Power was "subject to" certain rights of the Hoenshels, which we will discuss in greater detail, *infra*.

Having considered and rejected all of Empire's arguments, we conclude our discussion with a few additional observations.  The operative language in the 1912 Deed is in many ways similar to the language from an older deed discussed in ***Allen v. Wabash, St. L. & P. Ry. Co.***, 84 Mo. 646 (1884).  The conveyance at issue in ***Allen*** was a strip of land, which, as stated by the deed, was "for the purpose of being used by the [grantee] *for shipping purposes* and erecting thereon a warehouse or warehouses wherever they, the [grantee], may see proper to do so, or to so use it." *Id.* at 651 (emphasis added).  The deed further provided that "[t]he [grantor] *reserves the right* to cultivate and use for farming purposes any part or all of said strip of ten rods when not used by the [grantee] for shipping purposes or for warehouses, but for no other purpose." *Id.* at 651-52 (emphasis added).  Our high court rejected an argument that this deed conveyed fee title, holding that "no more than an easement passed by the deed," except that the grantor, who retained fee title, "reserved the right" to cultivate the strip of land burdened by the easement when not used for its "specified purposes." *Id.* at 652.

Here, like the deed in *Allen*, the 1912 Deed stated that the conveyance was for a specified purpose, i.e., "all for lake purposes in connection with the dam being constructed in said White River" for Ozark Power. Also like the deed in *Allen*, the Hoenshels "reserve[ed] [a] right" that could have interfered with the easement; specifically, the right "to move back fences" on the Property. In a deed, "a reservation is the creation, [on] behalf of the grantor, of some new right issuing out of the thing granted—that is to say, something which did not exist as an independent right." *Dozier v. Toalson*, 79 S.W. 420, 422 (Mo. 1904). In this context, even though the Hoenshels retained fee title, the creation of an easement nevertheless risked circumscribing any right they had previously enjoyed to move fences on the Property. *See generally* 28A C.J.S. *Easements* § 241 (2023) (discussing how fences and gates must not unreasonably interfere with an easement and must be necessary to preserve the use of the servient estate). The express reservation of a new right to do so makes sense if the Hoenshels wanted to avoid any such risk.

Moreover, it is significant that the Hoenshels "retain[ed]" instead of "reserve[ed]" "the right to occupy" the Property "down to the actual water line of said lake (according to the rise and fall of said lake water), for themselves and assigns." While a reservation is interpreted as the creation of some new right, the word "retain" is defined, "[t]o hold in possession or under control; to keep and not lose, part with, or dismiss." *Retain*, BLACK'S LAW DICTIONARY (11th ed. 2019). The use of this language suggests the Hoenshels, in retaining the right to occupy, conveyed something *less* than fee title to Ozark Power and is entirely consistent with the grant of a flowage easement. *See* 93 C.J.S. *Waters* § 27 (2023) (stating that "[w]here the proprietor of a dam has been granted the right to overflow land, however, the owner of the soil has a *right to occupy* and improve the property, limited only by the easement" (emphasis added)).

9

For all of the foregoing reasons, the circuit court erred in granting summary judgment on the basis of its legal conclusion that, by way of the 1912 Deed, the Hoenshels conveyed to Ozark Power fee title to the Property. Appellants' third point is granted. We need not address any of Appellants' remaining points.

**Decision**

The circuit court's judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

BECKY J.W. BORTHWICK, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – Concurs

DON E. BURRELL, J. – Concurs

10